CASE 59—PETITION EQUITY—MAY 13.

## Mitchell, &c., v. Campbell, .&c.

APPEAL FROM WASHINGTON CIRCUIT COURT.

CONSTRUCTION OF DEVISE—DEFEASIBLE FEE.—A devise of an estate, generally or indefinitely, with a power of disposition, carries a fee. But in construing the instrument in cases where the party has a power and also an interest, the intention is the great object of inquiry.

A testator, after devising his estate to an unmarried sister to enable her to take care of the children of a deceased sister, provided that if the sister should be alive when the children mentioned were "raised and old enough to no longer require care of guardian and support,"

she should "continue the ownership of the estate and do as she pleases with it at her death, provided she leaves heirs of her own body, which heirs are to take it. But if she dies without leaving heirs of her own body, then my will is that my brothers are to dispose of the estate for the benefit of my heirs at law." *Held*—That the sister took the fee defeasible upon the contingency of her dying without children, and, therefore, as she died leaving children, one to whom she conveyed the fee became invested upon her death with the absolute title.

J. W. S. CLEMENTS FOR APPELLANTS.

1. It will not be presumed that the testator intended to create an estate tail, such estates being forbidden by law. (Moore v. Howe, 4 Mon., 221; Moore v. Moore, 12 B. M., 659.)

2. The words "heirs of her own body" are to be construed as synonymous with *children*, and the will, therefore, vested the mother with only a life estate, remainder to her children. (Jarvis & Trabue v. Quigley, 10 B. M., 104; Mitchell v. Simpson, 88 Ky., 125.)

W. E. SELECMAN FOR APPELLEES.

The mother took the fee defeasible only in the event of her dying without children. (Parish v. Parish, 9 Ky. Law Rep., 281; Thackston v. Watson, 84 Ky., 210.)

THOMAS W. SIMMS ON SAME SIDE.

The mother of appellants was vested with the fee subject to be defeated in the event of her dying without children.

The plain intention of the testator as gathered from the whole instrument must control. (Field v. Leiter, 118 Ill.; Whitehurst v. Boyd, 8 Ala., 375; Steele v. Branch, 40 Cal., 3; Brown v. Slater, 16 Conn., 192; Thackston v. Watson, 84 Ky., 210; Redfield on Wills, vol. 1, p. 437.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

A. E. Goatley having conveyed her property to appellee Campbell, in trust for benefit of creditors, he brought this action for settlement of his transactions as trustee and for sale of her property, including a tract of one hundred and eighty-five acres now in controversy for payment of debts; and at the March term, 1892, of the court, a judgment was rendered for sale as prayed for in the petition.

But at the September term, 1892, appellants R. W. Mitchell, A. R. Mitchell and Hugh T. Mitchell, were, on their motion, made parties defendants, having filed a petition which was treated as an answer and cross-petition.

They state, in substance, that their mother, Maria Jane Mitchell, formerly Walker, died about eight years previously, leaving them her only children. That though she and her husband, father of defendants, in 1866 sold and conveyed absolutely the one hundred and eighty-five acres in question to R. P. Goatley, under whom A. E. Goatley claims, she, their mother, had only a life estate, remainder in fee being vested in them by the will of her brother and their uncle, Robert L. Walker, from whom the land was derived. Whether they have any interest in the land must, of course, depend upon proper construction of that will, dated in 1851 and admitted to record in 1854.

Except ten or twelve acres of land the testator stated he had promised to let his brother Murry Walker have, and desired conveyed to him, all his estate of every kind was in express terms devised to his mother and sister Maria Jane, to be held as a means of support for themselves, and to enable them to care for the children of his sister Emily Plat. But it was provided that in case Maria Jane died before those children were raised, he desired his brothers Murry and John, one or both, to take charge of the children and property, in conjunction with his mother, if living, and carry out his wish in regard to them, and to ultimately dispose of his estate for benefit of

his heirs, though his mother was not, in any event, to be disturbed in her possession and ownership of the property.

Provision in case of his sister Maria Jane being alive when the children mentioned were "raised and old enough to no longer require care of guardians and support," is in the following language: "But if my sister Maria Jane is living, she is to continue the ownership of the estate, and do as she pleases with it at her death, provided she leaves heirs of her own body, which heirs are to take it. But if she dies without leaving heirs of her own body, then my will is, that brothers John and Murry Walker are to dispose of the estate for the benefit of my heirs at law."

Whether Maria Jane Walker took under the clause quoted the fee, or an estate for life with power of disposition, is the main and decisive question.

It is a well established rule that a devise of an estate generally or indefinitely, with a power of disposition, carries a fee. But as said in Kent's Commentaries, volume 4, 335, "in construing the instrument, in cases where the party has a power and and also an interest, the intention is the great object of inquiry."

We do not think there is much difficulty in determining what was the testator's plan for disposing of his estate; for it was evidently well considered and matured. The term "ownership," used to describe the quantity of estate he intended his sister Maria Jane to have, according to its common signification, comprehends a fee, and can not be prop-

erly restricted so as to mean a mere life estate. And the proviso of her leaving. heirs of her own body, who were to take the estate, was obviously intended to be operative only in case she died intestate, and not to limit the estate already given to her. ' For their absolute right to take it can not be at all reconciled with her unqualified power to do as she pleased with it at her death. Moreover, if the testator had intended to restrict the devise to a life estate, it is a reasonable supposition he would have used the word children instead of heirs, to indicate who were at all events to take at her death.

When the will was written, Maria Jane was unmarried, and it is very plain he intended she should have the fee defeasible upon the contingency of her dying without children and passing to his heirs, who, in that case, would have been her right heirs.

Then as she acquired a fee, power existed to dispose of the land in question by either deed or will, subject, however, to defeat of the title conveyed upon the contingency mentioned, and the words "at her death" were evidently not intended, and did not have effect, to qualify that power, but were used rather to negative the idea of a life estate.

As, therefore, the contingency upon which alone the fee with which Maria Jane was invested was to be defeated, did not happen; Goatley became invested, in virtue of the deed of herself and husband, Mitchell, with absolute title to the land in question.

Judgment affirmed.