WILLIAM A. WOLF, Appellant, v. CHARLES C. WOLF,
Appellee.

**Wills:** ASSIGNMENT OF INTEREST BY DEVISEE: RIGHTS AFFECTED.  An
1   assignment of all remaining rights, title and interest in the estate
of the assignor's testator, which recited that a portion of the
estate had been previously distributed, did not operate to pass
the assignor's executory right to receive his share of the property
devised to a sister contingent upon her death without issue.

**Estates of decedents.**  The property, real and personal, constituting
2   the assets of which a person dies possessed, when collectively
considered, is termed his estate; and until legally distributed the
several items are said to belong to his estate.

**Assignment of property:** EXTRINSIC EVIDENCE.  Extrinsic evidence
3   of collateral facts and circumstances is admissible in determin-
ing what property passed by assignment; and correspondence of
the parties bearing on the question is admissible, which if lost
or destroyed may be shown by secondary evidence.

*Appeal from Butler District Court.*—HON. J. F. CLYDE,
Judge.

FRIDAY, JUNE 9, 1911.

THE opinion states the case.—*Reversed.*

. *F. B. Sheldon* and *N. W. Scovel,* for appellant.

*Courtright & Arbuckle,* for appellee.

WEAVER, J.—On July 11, 1899, Aaron Wolf, of Stephenson County, Ill., died testate. By the terms of his will as originally made, after providing for his wife and the payment of legal claims and charges, he gave the residue of his estate to his nine children, Susan C. Best, Sarah A. Shuler, Annie R. Johnson, Harriet F. Goodrich, Maria A. Becker, Lydia S. Judson, Flora B. Rhodes, Charles C. Wolf, and William A. Wolf, share and share alike. Charles C. Wolf, a resident of Iowa, and Leonard Stoskopf, of Illinois, were named as executors of the will, and for the purposes of distribution were authorized to sell the real estate of which the testator died seised. By a codicil at a later date, an additional legacy was given to the wife, and with reference to the share of the testator's daughter Harriet F. Goodrich the following further provision was made:

Fourth. I hereby order and direct that upon any division of my estate or any part thereof, as directed in and by my said will, my executors shall pay the share and portion of my estate which is in and by said will devised to my said daughter, Harriet F. Wolf Goodrich, or to which she may be entitled out of my estate, upon any division thereof, during her lifetime, over to my son-in-law, Walter H. Rhodes, now of Lewiston, Fulton County, Illinois, and that he shall as trustee for my said daughter hold the same in trust for her during her lifetime, and as such trustee keep the same invested at the highest rate of interest obtainable, compatible with safety and well secured by first mortgage on real estate, and pay the income therefrom arising to her from time to time as she may request for her support and maintenance during her natural life. At her death, if she dies, leaving no child or children born of her body, the principal of her share and portion and all interest remaining in the hands of said trustee or his successor in trust, shall revert to my estate, and be divided among my remaining children as directed in any by said will, the

descendants of any of my deceased children to receive their parents' share.

Somewhat similar provisions were also made with reference to the shares of Mrs. Shuler and Mrs. Becker. The will and codicil were admitted to probate. On September 6, 1901, the resident executor, Stoskopf, to whom the actual responsibility of administering the estate had been left, made final report, showing full settlement thereof. This report was approved, and the executor discharged. Among the acts of the executor so reported and approved was the payment of the equal share of Harriet F. Goodrich in the residue of her father's estate into the hands of her trustee, Walter H. Rhodes. Thereafter, on March 1, 1907, Harriet F. Goodrich died, leaving no husband surviving her and no child or children born of her body. At that date the share or fund derived from the estate of Aaron Wolf and held in trust for her by Walter H. Rhodes amounted to $12,565.44. On the theory that such was his duty, Rhodes paid the fund over to the defendant herein, Charles C. Wolf, who, as we have already noted, was one of the executors of the will of Aaron Wolf. On August 21, 1909, this action was begun in equity by William A. Wolf, who, after citing the foregoing facts, proceeds to aver that, upon the death of Harriet F. Goodrich, the trust fund held for her by Rhodes, following the course prescribed by the will of Aaron Wolf, became the property in equal shares of the eight surviving children of Aaron Wolf, but that defendant upon demand of the plaintiff for his just and equal proportion thereof refuses to pay or account for the same. Upon these allegations an accounting is prayed, and that plaintiff recover from defendant his one-eighth part of said fund with interest from the date when the same came into defendant's possession.

In answer to the demand, the defendant, after denying generally all allegations of the petition not admitted, alleges that on October 21, 1902, the plaintiff sold and as-

signed to the defendant all his remaining right, title, and interest in and to the estate of Aaron Wolf, deceased, said assignment having been made in writing in words and figures as follows: "Beatrice, Neb., October 21st, 1902. For value received, and in consideration of the sum of three thousand dollars, to be paid by C. C. Wolf, I hereby sell, assign, and transfer to C. C. Wolf all my remaining rights, title and interest in and to the estate of the late Aaron Wolf, deceased, consisting of real and personal property located in Illinois and Iowa, a portion of said estate having been disbursed heretofore. This transfer is also to operate as a receipt in full for my interest in said estate in full. Dated at Beatrice, Neb., October 21st, 1902. William A. Wolf." (Duly acknowledged.)

By virtue of this instrument, defendant claims to have acquired whatever contingent or executory right, title, or interest the plaintiff may have had to share in the trust property or funds held by Rhodes, and that as against the plaintiff said property and funds were delivered by Rhodes to him in his own right, and plaintiff is not entitled to share therein. By way of replication to this plea the plaintiff denies that he ever sold, assigned, or transferred to defendant his right to share in trust property formerly held by Rhodes as aforesaid, and denies that such is the purpose, intent, or legal effect of the written instrument pleaded in the answer. He says, in substance, that among the assets of the estate left by Aaron Wolf was a farm of four hundred and sixty acres in the state of Illinois; that, for the purpose of promoting a settlement of said estate, it was agreed by and between the beneficiaries under the will to allow said farm to be sold at executor's sale, and that defendant Charles C. Wolf would purchase and take and hold the title thereto in trust for all said beneficiaries; that, in pursuance of said agreement, defendant did purchase and take said title at the nominal price of $21,000, though he paid nothing in fact therefor, and made settle-

ment with the executor by delivering to him the receipts executed by the several heirs made for that purpose, and purporting to acknowledge payment to them of their several shares in the proceeds of such sale. Plaintiff further alleges that after defendant had held said title in trust, and having managed and leased the land for about one year, an agreement was had between said defendant and himself by which plaintiff sold and agreed to relinquish to defendant all his right and interest in said, land and its rents and profits for the sum of $3,000, and that the writing pleaded in the answer was by him executed and delivered to the defendant to evidence and effectuate said agreement and for no other purpose. This agreement, plaintiff avers, was had by written correspondence in the possession of the defendant. Finally, plaintiff alleges that at the date of said writing the estate of Aaron Wolf had already been fully administered, settled, and adjusted, and the property now in controversy no longer constituted any part of the said testator's estate, and title thereto was not nor could it be in any manner affected, diverted, or changed by the giving of said instrument. Furthermore, he avers that defendant has interpreted said instrument as in the nature of a quitclaim deed of plaintiff's interest in the land, and has ever since asserted ownership and control in his own right of the share formerly held by the plaintiff in said land, and he is therefore estopped now to claim or assert for said instrument any other or different character. The record discloses little dispute as to most of the material facts: The death of Aaron Wolf; the terms of the will; the nature and extent of the estate left by him; the settlement and distribution by Stoskopf, the executor; the delivery of the share of Mrs. Goodrich to her trustee; her subsequent death; the delivery of the trust estate to the defendant, and his refusal to pay over any part thereof to the plaintiff are all conceded.

As we understand the defendant's position, he concedes

that but for the writing executed by the plaintiff under date
of October 21, 1902, and pleaded in the answer as hereinbe-
fore noted, plaintiff would be entitled to recover the full
one-eighth part of the property in the hands of Mrs. Good-
rich's trustee at the date of her death and now in the pos-
session of the defendant.   This would seem to reduce the
controversy to the single question whether that writing is to
be construed as a sale and transfer to the defendant of
plaintiff's right to succeed to a share of the property held
in trust for Mrs. Goodrich, which right was then contingent
upon the death of Mrs. Goodrich without living issue.   That
writing, as will be seen, is quite brief and informal in char-
acter, and can be fairly interpreted and applied to specific
items of property or property rights only by the help of ex-
trinsic evidence.   The extrinsic showing having any bearing
upon this question is made up of the documents, facts, and
circumstances to which we have already made reference, to-
gether with additional matters, which may be stated as fol-
lows:   The defendant concedes he at first took the title to
the four hundred and sixty-seven acres of land in trust for
the joint benefit of all the children of Aaron Wolf, who
are named in his will.   It further appears without substan-
tial dispute that thereafter, and during the lifetime of Mrs.
Goodrich, defendant purchased the several interests held
in this land by W. A. Wolf (plaintiff herein), Mrs. Judson,
Mrs. Becker, Mrs. Johnson, and possibly others of his sis-
ters, the price given in each instance so far as disclosed being
$3,000.   From each he took a combined written assignment
and voucher substantially in the form of the one made by
plaintiff and pleaded in this answer.   Later, when Mrs.
Goodrich died and the trust fund was paid over to defend-
ant, the evidence tends to show that he retained the one-
eighth share thereof due him as one of the devisees of
Aaron Wolf, also the one-eighth share of William A. Wolf,
the plaintiff, and distributed the remaining six-eighths
directly or indirectly to or for the benefit of his six sisters,

Mrs. Johnson, Mrs. Becker, Mrs. Rhodes, Mrs. Shuler, Mrs. Judson, and Mrs. Best. So far as appears, defendant made no claim against either sister from whom he held the assignments like the one he had taken from plaintiff that such assignment vested him with the right to that sister's share in the fund. His explanation of this fact is that he voluntarily waived his legal right in that respect as a matter of grace or good will on his part. After the death of Mrs. Goodrich, plaintiff, receiving information that Rhodes had turned the money over to the defendant, drew upon the latter through a local bank for the one-eighth part of the fund. On presentation to the defendant, he refused to honor the draft, indorsing upon it a memorandum as follows: "Nothing here for him. C. C. W. Walter has not yet made his report." The "Walter" thus referred to is presumably the trustee, Walter H. Rhodes. A subsequent draft was also dishonored without explanation. It is conceded that the negotiations leading up to the assignment to the defendant were conducted by correspondence, but the letters on neither side have been preserved. Plaintiff swears that his proposition to defendant was to sell his interest in the land only which was the last remaining undivided asset of their father's estate, and that no mention was at any time made between them concerning any assignment or transfer of plaintiff's contingent or possible right to receive a part of the funds properly held in trust for their sister Mrs. Goodrich, who was then living and of an age which did not exclude the possibility of her bearing children. This statement as to the nature and purport of the correspondence between these brothers is not denied by the defendant, who simply says: "I presume I received some letters leading up to the execution of this written assignment, but don't remember the contents. None of the negotiations were made in person. I have not the letters now, nor do I know what has become of them." In another place he says: "There was some correspondence between

me any my brother William with reference to this matter before the making of this assignment. It related to the balance of his interest that had not already been disbursed in the estate. This correspondence was not very extensive." To the question of his counsel, "State whether or not the language of the assignment coincided with the purport of the correspondence which passed between you?" he answered over an objection to its competency, "Yes, sir." It also appears that when the defendant took title to the four hundred and sixty-seven acres of land in trust, he gave to each of his brothers and sisters a written receipt or voucher acknowledging such trust, and that, when plaintiff made the assignment now in controversy, he returned said voucher to defendant, who destroyed it. From this record it is argued for plaintiff that whether read by itself without reference to extrinsic facts, or considered in the light of all the facts established without substantial dispute, the instrument can not be construed as having any other or farther effect than as a transfer, relinquishment, or conveyance of his right in the four hundred and sixty-seven acres of land which was the last undivided item then in existence of the estate of Aaron Wolf, and as having neither in fact nor in law nor in the intention of the parties thereto any effect upon his contingent right to share in the estate which was then held in trust for Mrs. Goodrich in the event that she thereafter die without issue. On the other hand, counsel for the defendant urge upon our attention as decisive of the controversy the following propositions: First, that said instrument in express terms assigns, relinquishes, or conveys to defendant the plaintiff's contingent right or interest aforesaid, that the language to that effect is so clear and explicit as not to be open to construction, or if construction be resorted to it is not to be aided or influenced by reference to extrinsic evidence; and, second, that while merely contingent or possible interests in property are not ordinarily subject to assignment or conveyance, an exception is

recognized where the assignee already owns some right, title,
or interest in the property, and obtains a relinquishment
from the holder thereby strengthening, increasing, or en-
larging his own estate therein. Defendant, it is said, comes
within this exception, for he concededly held an interest in
the property in his own right, and could therefore' make a
valid and enforceable purchase of outstanding contingent
interests to complete and perfect title in himself. For
the purposes of this case, the abstract proposition of law
contended for in the second of the propositions here stated
may be treated as entirely sound, but it does not, as we
view it, determine the question we have to decide.

At the very threshold of the discussion we meet the
inquiry whether upon its face and considered by itself
alone the written instrument purports to transfer ,to de-
fendant the plaintiff's contingent interest in
the trust property. This we are clear must
be answered in the negative. True, it in
express terms assigns all the plaintiff's re-
maining interest in and to the estate of the late Aaron Wolf
consisting of real and personal property located in Illinois
and Iowa a part of which has been disbursed heretofore,
but it does not name Mrs. Goodrich nor in any manner
make reference to the fund or property held in trust for
her or to the right of plaintiff to succeed to a share of
such property or fund should his sister die without issue.
This objection can be met only by the contention that the
assignment of such interest is a necessary and unavoid-
able implication from the assignment of all plaintiff's "re-
maining rights, title and interest in the estate of Aaron
Wolf." But this does not follow. · The subject of the
transfer is expressly confined to the "estate of Aaron Wolf,"
and we can not assume as a matter of law that the parties
intended thereby to effect a transfer of plaintiff's right in
the property or moneys then held by Mrs. Goodrich and
her trustee.

1. WILLS: assign-
ment of in-
terest by de-
visee: rights
affected.

The word "estate" is one of varied meaning, both in law and in common usage. It is very commonly employed to designate the property both real and personal compos-

**2. ESTATES OF DECEDENTS.** ing the assets of which a person dies seised or possessed. This property collectively considered is spoken of as "the estate of the deceased," and, until distributed to creditors, heirs, devisees, and legatees, the separate or individual items of such property are said to "belong to" his estate. It is quite obvious in this sense that reference is made to the "Estate of Aaron Wolf." At that date, as we have already observed, the estate left by Aaron Wolf had been fully distributed to the several beneficiaries, save the four hundred and sixty-seven acres of land which was then being held for that purpose in trust by the defendant. Other than his land and the rents and income therefrom the estate of Aaron Wolf had ceased to be. The assignment itself describes the estate as "consisting of real and personal property located in Illinois and Iowa"—a portion of which had already been distributed, and plaintiff by that writing undertakes to "assign and transfer" all his remaining rights, title, and interest in and to that estate. In other words, he there assigns and transfers his interest, whatever it may be, in the real and personal property of the estate not yet distributed. In no proper sense of the term can it be said that the trust fund then in the hands of Rhodes for the use of Mrs. Goodrich constituted any part of the undistributed estate of Aaron Wolf. The original devise to Mrs. Goodrich was an unconditional and absolute title to the one-ninth of the residue of the estate. Assuming the validity of the codicil, it did not revoke or withdraw the gift so made, but attached conditions thereto which rendered the title so passed determinable upon the happening of an uncertain event. By it the possession alone is given to the trustee. The possession is held by him "for my said daughter," and is to be held "in trust for her." If, however, she dies with no issue, it

is provided that the property and estate so held by or for her "shall revert to my estate and be divided among my remaining children." When pursuant to the will and codicil the one-ninth of the residue of the property of Aaron Wolf was turned over into the hands of the trustee for his daughter, no estate therein either contingent or vested was left in the executor or in the brothers or sisters of that daughter. The entire title was in the daughter and her trustee, subject, however, to possible determination by her death without issue. The right of her brothers and sisters to succeed to the title in the event of such determination constituted neither a remainder nor a reversion. Nor was it an expectancy. It was at best a mere possibility or executory interest, the existence of which was not inconsistent with the vesting in her of the entire fee or title. In other words, the entire fee, if real estate, the entire title, if personalty, was in Mrs. Goodrich and her trustee until it was divested (five years after the date of this assignment) by her death without issue, and then, and not "till then," did her brothers and sisters become vested with any right to share in the property she had received from her father. Prior to that time it is true they each held the executory right or possibility which entitled them to succeed to such property upon the happening of a certain event, but it was an executory right which attached to the property of Harriet F. Goodrich, and not in the property of the estate of Aaron Wolf. See *Persall v. Dwight,* 2 Mass. 84 (3 Am. Dec. 35); *Fosdick v. Cornell,* 1 Johns. (N. Y.) 440 (3 Am. Dec. 340); *Wilson v. Wilson,* 46 N. J. Eq. 321 (19 Atl. 132); *Schumaunz v. Goss,* 132 Mass. 141; *Hooper v. Bradbury,* 133 Mass. 303; *Niles v. Gray,* 12 Ohio St. 331; *Lippett v. Hopkins,* Fed. Cas. No. 8,380; *Mitchell v. Campbell,* 94 Ky. 347 (22 S. W. 549); *Waldron v. Gianini,* 6 Hill (N. Y.) 601; *Eby v. Eby,* 5 Pa. 461; *Ramsay v. De Remer,* 65 Hun. 212 (20 N. Y. Supp. 143). It follows of necessity that the as-

signment or transfer by plaintiff of his "remaining inter-est in the estate of Aaron Wolf" does not operate as an assignment or transfer of his executory right to succeed to the property of Harriet F. Goodrich upon the contingency of her death without issue then living. The use in the will of the words "shall revert to my estate and be divided among by remaining children" means no more than that upon the happening of the contingency provided for the property given to this daughter should then go to her sur-viving brothers and sisters. *Beatty v. Trustee,* 39 N. J. Eq. 452; *Bennett's Estate,* 134 Cal. 320 (66 Pac. 370).

Thus far we have discussed the case with but slight reference to the effect of the proved extrinsic or collateral facts and circumstances upon the interpretation of the as-signment. That such aid may be invoked in a proper case is well established (2 Page on Contracts, section 1123; *Rapp v. Linebarger,* 149 Iowa, 429, and the instrument before us is by no means so clear, full, and specific as to render such assist-ance improper. There is much in the record to indi-cate that, when this paper was made and delivered neither party thereto had any thought that it included a transfer to defendant of plaintiff's executory right in the share which the sister had already received from the estate of Aaron Wolf. To show that such was the intent defendant offers not a word or item of evidence except by the exhibit of this writing which does not in terms express that under-standing or purpose. Had the correspondence between them been preserved, it would certainly have been admis-sible in evidence as bearing upon the truth of this contro-versy. See *Excelsior v. Messinger,* 116 Wis. 549 (93 N. W. 459).

It was shown to be lost or destroyed, thus making sec-ondary evidence competent. Plaintiff testifies positively that in these letters no other subject or negotiation except the sale of his remaining interest in the undistributed prop-

3. ASSIGNMENT OF PROPERTY: extrinsic evidence.

erty left by their father was considered, and the defendant, though testifying in his own behalf and questioned upon this subject, does not dispute that assertion further than to say he "don't remember the contents" of the letters only that they "related to the balance of his interest that had not already been disbursed in the estate," and that the language of the assignment "coincides with the purport of the correspondence." This very indefinite response may be literally true, but it constitutes no denial of plaintiff's sworn assertion as to the subject of their dealings and origin of the paper on which the defense is based. Again, when several years later Mrs. Goodrich died and the funds held in trust for her came into his hands, the fact that he accounted therefor to his sisters or their several families without discrimination against those who had given him assignments after the manner of the assignment made by plaintiff, and the further fact that, when drawn upon by plaintiff, he explained his refusal to honor the draft by the simple statement that there is "nothing here for him; Walter has not yet made his report,"—afford strong ground for the inference that his claim to have become the owner of that share in his own right is an afterthought. In short, whether we look simply to the terms of the writing or consider the case in its more general aspect, interpreting the language in the light of all the incidents to the transaction, we reach the same conclusion that the assignment does not contemplate any relinquishment of plaintiff's right to share in the trust fund upon the death of Mrs. Goodrich without living issue. The plaintiff is therefore entitled to the relief demanded and the decree denying it must be *reversed*.