W. G. Rowe, Appellant, v. John D. Strother and E. E. Mont-
gomery, Executors of the Estate of Jennie Bohan.—111 S. W.
(2d) 93.

Division Two, December 17, 1937.

Olney Burrus, Rufus Burrus, Harvey Burrus and Charles V. Garnett for appellant.

Duvaul P. Strother, John F. Thice and Thos. R. Hunt for respondents.

1151

COOLEY, C.—This case involves construction of the will of Jennie Bohan, who died testate in Jackson County, Missouri, in November, 1930. By her will she designated respondents as executors of her will. The will was duly probated and respondents qualified as executors. After expiration of the statutory period for the filing of demands against the estate appellant, plaintiff below, filed in the probate court this claim for the sum of $10,000, which he therein asserted was the reasonable value of services rendered to the deceased as her physician and which he claimed as a legacy under item 4 of the will. Plaintiff offered evidence, at the close of which, owing to rulings of the court which he says precluded recovery, he took a nonsuit (whether voluntary or involuntary is a disputed question) with leave to move to set the same aside. Such motion was filed and was by the court overruled, and plaintiff appealed.

By item 1 of her will testatrix directed that her just debts and funeral and administration expenses should first be paid. By item 2 she gave to a nephew $3000 because "I have always been very fond of him and make this bequest for that reason." By item 3 she gave to a woman friend $1000, "because of the interest she has taken in me and the care she has given me." Item 4 reads:

"I give, devise and bequeath to my physician and friend, Dr. W. G. Rowe, the sum of One thousand dollars for the reason that he has been my physician for years and I never felt as though I had paid him what his services were worth and in addition to said One thousand dollars, I want my executors to pay him a reasonable sum for his services as my physician. He has not only been my physician but one of my best personal friends in Blue Springs."

Items 5, 6, 7, 8 and 9 made specific bequests and provided for distribution of the residuum.

The only question on this appeal, on the merits, is as to the meaning and effect of said item 4 of the will, viz., whether or not plaintiff's claim for services is a *legacy* bequeathed to him by said clause, or a demand as for debt against the estate. If the latter, it is concededly barred by the applicable statutes relative to the time for filing demands. If the former, it is not barred.

When plaintiff presented his claim to the executors they refused to pay. The matter was heard and evidence taken in the probate court. That court found and adjudged that said item 4 was not a legacy but only an acknowledgment of an unliquidated debt which plaintiff should have presented within the statutory period of one year, and that, having failed to do so, his claim could not be allowed. Plaintiff appealed to the circuit court, where the cause came up for trial

*de novo*. At the beginning of the trial plaintiff asked the court to declare "as a matter of law that the provision (item 4) is unambiguous and it does provide for the payment as a legacy for whatever would be a reasonable sum the doctor would be entitled to." The court reserved ruling on that request, indicating that it thought the provision ambiguous rather than unambiguous as to whether or not it was testatrix' intention to make a *bequest* or *legacy* of such sum as might be determined "by the executors or the probate court" to be the reasonable value of plaintiff's services. There was no exception saved to this action of the court. Plaintiff proceeded to introduce evidence, which tended to show the following:

Testatrix, at the time of making her will, was an old woman, over eighty years of age. For a number of years, since about 1921, Dr. Rowe had been her physician. She liked and trusted him, not only as her physician but as a friend, and appreciated his services and attentions to her. At first his professional calls were not particularly frequent but became necessarily more frequent and exacting during her later years. She died a short time after the will was executed; though at the time of its execution it could not be told how long she might live. The evidence indicates that when she made her will she expected Dr. Rowe to continue acting as her physician. It does not clearly appear whether or not she had made payments to him for services from time to time, or if so, in what amounts. The evidence indicates that she was generally prompt in paying her ordinary bills and usually paid in cash. Plaintiff introduced an account, identified by his wife as his account for services rendered to testatrix, showing a large sum due him. Mrs. Rowe testified that, prior to the execution of the will, testatrix had told her on one occasion that she intended "to see that Dr. Rowe was well paid for taking care of her, that he had been a true friend; stayed by her in everything, he never failed her night or day when she called;" that on the day the will was written she was at testatrix' home, though not in the room where and when the will was written, and that on that day testatrix said to her "I am going to remember you and Dr. Rowe both in my will."

Another witness, Mrs. McMahon, testified that she was at testatrix' home the day the will was written, though not in the room where and when it was written, and that testatrix, before the will was written, said to her "she was going to leave Mrs. Rowe $500 in her will and Dr. Rowe $1000, and that she owed Dr. Rowe a big doctor bill;" that after the will was signed testatrix told her she had given Dr. Rowe $1000, "she owed him a doctor bill, and had given Mrs. Rowe $500. . . . She said she owed him a big doctor bill . . . it had been going on for a year or two, taking care of her, and he had been her doctor ever since before her husband died."

Testatrix did not leave Mrs. Rowe any bequest nor mention her in the will. It may be further stated here that plaintiff's claim for services, as indicated by the evidence, seems to go back more than "a year or two," viz., to about 1921.

Summing up this phase of the evidence it tended to show the rendition of services by Dr. Rowe of value considerably in excess of the $1000 bequest given by item 4 of the will, with no showing of payments except and if such may be inferred from the language of said paragraph.

At the close of this evidence plaintiff stated that he had no further evidence to offer relative to that intent of testatrix with respect to whether, by item 4 of the will, she meant to give, *as a legacy,* to Dr. Rowe a "reasonable sum" (unliquidated) for his services as her physician, in addition to the $1000 specific bequest. The court indicated that in its opinion there was nothing to sustain the contention that said item 4, in the "second portion" thereof (relating to payment for services), was intended as a legacy and further indicated that the court "will be very attentive to the sustaining of a demurrer." Thereupon plaintiff's counsel said he desired "to take an involuntary nonsuit with leave to move to set the same aside." The court said "I see no reason why plaintiff should not be permitted to do so." Plaintiff then asked the court to give the following declaration of law:

"The court declares the law to be that the will of the decedent, Jennie Bohan, is unambiguous and the provision in Article four thereof in favor of Dr. A. M. Rowe is by the court construed to be a legacy, and the sole determination left for the jury's verdict is the reasonable value of the services of the claimant, Dr. A. M. Rowe."

The court refused said declaration, plaintiff excepting. Plaintiff made no further or other announcement of taking a nonsuit. No demurrer was tendered by defendants (nor, of course, therefore, passed upon by the court), so far as shown by the bill of exceptions. However, the abstract of the record proper shows this:

"Now after having heard all of the evidence on behalf of the plaintiff, the defendants offered an instruction in form of a demurrer. The court indicated that he would sustain said demurrer, and the plaintiff thereupon took an involuntary nonsuit, with leave to move to set the same aside, to which ruling of the court plaintiff excepts."

In due time plaintiff filed motion to set aside the nonsuit, which was overruled and he appealed, as we have indicated.

In our opinion the ruling of the court refusing plaintiff's requested declaration of law was correct. It is conceded and is too well established to require citation of authorities that the cardinal rule in construing wills is to ascertain the testator's intent, as expressed in his will. It is not a question of what the court may think

the testator should have done or said in his will but of what he did say. The law on this point is thus stated in McCoy v. Bradbury, 290 Mo. 650, 657, 235 S. W. 1047, 1049:

    "It is the general rule that, when any doubt or uncertainty arises as to the testator's intention, extrinsic facts are admissible to explain the language of the will, regardless of the nature of the ambiguity, whether it be patent or latent. In every case the court is entitled to be placed in possession of all the information which is available of the circumstances of the estate and family of the testator when he made his will, to the end that the court may be in his situation as nearly as may be, and may interpret and understand the will as he would if he were living. [2 Underhill on Wills, sec. 910; Willard v. Darrah, 168 Mo. 660, 668, 68 S. W. 1023, 90 Am. St. Rep. 468; Cox v. Jones, 229 Mo. 56, 62, 129 S. W. 495.] But such intrinsic (extrinsic?) evidence is admissible solely for the purpose of ascertaining the.testator's intention from the language he has used. It cannot be heard to show that he meant one thing when he said another or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to make, but did not in fact make. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution. [28 R. C. L., sec. 243.]"

    In the case before us the will gives Dr. Rowe $1000 "for the reason that he has been my physician for years and I never felt as though I had paid him what his services were worth and in addition to said one thousand dollars, I want my executors to pay him a reasonable sum for his services as my physician." As contended by appellant,—a contention sustained by numerous authorities,—the words "want," "desire," etc., may be and often are construed to be mandatory and to amount to a *direction* or bequest. Such words may, however, be only precatory. It depends upon the context and the circumstances shown tending to indicate the sense in which the words are apparently used.

    It is also true that a bequest may be made in satisfaction of a debt and still be, technically, a legacy. We deem it unnecessary to discuss the cited authorities on the question of *presumption* arising where a bequest equals or exceeds the amount of an acknowledged debt, or vice versa. There is no room in this case for presumption on that point. The will clearly indicates that testatrix did not intend the $1000 bequest to be in full payment of whatever *debt* she owed Dr. Rowe. We think, however, that the language of the will indicates that she had made payments to Dr. Rowe for services but did not consider them adequate and, also, because of her friendship

for him, meant to *give* him the $1000 and to make it plain that she did not intend said bequest to be considered as payment for services but that he should be paid for his services as though such bequest had not been made. The trial court apparently so interpreted item 4 of the will. The extrinsic evidence introduced (the competency of which we need not consider, because it was offered and introduced by appellant), does not help appellant's contention. It tended only to show that testatrix intended to "remember" Dr. Rowe in her will, which she did by the $1000 bequest, and that she acknowledged owing him still an unliquidated doctor bill, which she did not want to be considered as paid by the $1000 bequest. We think the provision "in addition to said one thousand dollars, I want my executors to pay him a reasonable sum for his services as my physician" indicates such purpose rather than an intent to provide a legacy.

Testatrix did not indicate in her will how much she had previously paid her physician nor what amount she thought she still owed him; whether or not she meant by the "reasonable sum" mentioned the total value of all services rendered or only the balance due after deducting payments, if any, previously made; whether she had in mind services going back "a year or two," as Mrs. McMahon said testatrix told her, or for the whole period during which Dr. Rowe had treated her; nor whether the services mentioned were services already rendered or included services to be rendered. We have mention that the evidence indicated that testatrix obviously expected Dr. Rowe to continue attending her as her physician, as he did do. The fact that she lived but a short time after the will was written could hardly affect this question. She did not and could not know when making the will, so far as the evidence discloses, how long she might live nor how much the doctor's services in the future might be worth. Further, who is to determine the "reasonable sum" which she said she wanted her executors to pay, and how determine it? The executors? The will does not express an intent to clothe them with such discretion. Was it to be determined by the court, and if so what court? The law provides a method for determining and paying *debts* against a decedent's estate, viz., by the timely filing of a demand in the probate court.

Respondent contends that the portion of said item 4 relative to payment for services, even if treated as an intended legacy, is too uncertain to be enforceable, citing among other authorities, the following:

Borland on Wills and Administration (Enlarged Ed.), section 123, page 338, which says: "If a gift be so uncertain in amount or character that the court cannot determine its extent, it is void for uncertainty."

Ballantyne v. Turner et al., 59 N. C. 224, wherein the provision,

"If I have not given my wife a plentiful support, she is to have enough of the interest of said money (previously referred to) to make her a plentiful support," was held too vague and indefinite to be enforceable.

Appellant cites cases, of which Thomson v. Thomson, 115 Mo. 56, 21 S. W. 1085, 1128, is illustrative, wherein the devise of "the tract of land on which I now reside" was under consideration and extrinsic evidence was admitted to show what that tract of land consisted of. The court said, 115 Mo. 1. c. 66, 21 S. W. 1. c. 1128, quoting from Sanford v. Raikes, 1 Mer. 646:

"I had always understood that, where the subject of a devise was described by reference to some extrinsic fact, it was not merely competent, but necessary to admit extrinsic evidence to ascertain the fact and through that medium to ascertain the subject of the devise. . . . Here the question is not upon the devise but upon the subject of it. Nothing is offered in explanation of the will or in addition to it. The evidence is only to ascertain what is included in the description which the testator has given of the thing devised. Where there is a devise of the estate purchased of A, or of the farm in the occupation of B, nobody can tell what is given until it is shown by extrinsic evidence what estate it was that was purchased of A or what was in the occupation of B."

In that and like cases the bequest or devise was certain and specific as to the testator's intent, the only matter requiring extrinsic evidence being the identification of the thing bequeathed or devised. We think it doubtful, to say the least, whether so much can be said of the provision of the will here in question as to payment for services. But since we are of opinion that said portion of this will was not intended as a *legacy* it is unnecessary to pursue that thought. The apparent indefiniteness and uncertainty of that provision, if considered as a legacy, lends support, we think, to our conclusion that it was not so intended.

█ Respondent has filed here a motion to dismiss the appeal, on the ground that the nonsuit was voluntary, from which no appeal lies. On the whole record presented, which we have but sketched, we are inclined to think the nonsuit should be treated as involuntary and, therefore, furnishing the basis for an appeal. But since deciding the case on the merits reaches, in effect, substantially the same result, we shall not lengthen this opinion by discussing the cases cited, pro and con, on the motion to dismiss. We overrule that motion and affirm the judgment. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.