The Methodist Episcopal Church of Marceline et al., Respondents, v. Judith Thomas, Executrix, et al., Appellants.—145 S. W. (2d) 157.

Kansas City Court of Appeals. December 2, 1940.

*J. A. Collet* for appellants.

*G. Derk Green* for respondent.

CAVE, J.—This is a suit brought by the Methodist Episcopal Church of Marceline and the members of its Board, praying for a construction of the will of J. C. Bell, deceased. The defendants, appellants, by a proper pleading, joined in the request for the construction of such will. Eliminating the formal parts, the contents of the will are as follows:

"First: I order and direct that my Executrix hereinafter named pay all my just debts and funeral expenses as soon after my decease as conveniently may be.

"Second: After the payment of such funeral expenses and debts, I give, and bequeath to my Executrix, as Trustee of the Bell Cemetery on my home farm, the sum of One hundred ($100.00) dollars for the upkeep of the cemetery.

"Third: I give and bequeath to the Methodist Episcopal Church of Marceline, Mo., the sum of One thousand ($1000.00) dollars, to be used or invested by the Board of Trustees where it will do the church the most good.

"Fourth: I give and bequeath to Mr. W. A. Thomas and his wife, Mrs. Judith Thomas, all of the remainder of my personal property of every kind. I intend this bequest to include all of my livestock and farming implements, all money, notes and mortgages, including the $2400.00 loan I hold on their farm, and all of my life insurance money which is payable to my estate, and any other personal property that I may own at the time of my death.

"Fifth: I give, bequeath and devise to Mrs. Bernice Elizabeth Mobley of Marceline, Mo., the North half of the Southeast quarter of Section fifteen, in Township Fifty-six, Range eighteen, containing eighty acres, in Chariton County, Missouri.

"Sixth: I give, bequeath and devise to Vern Henry Thomas, son of W. A. Thomas of Chariton County, Mo., the Southwest quarter of the southeast quarter, and the South-east quarter of the Southwest, all in Section fifteen, Township Fifty-six, Range eighteen, containing eighty acres, in Chariton County, Missouri.

"Seventh: I give, bequeath and devise to my sister-in-law, Miss Verlie Redding, the West half of the North-west quarter and the West half of the Southeast quarter of the Northwest quarter, all in Section fifteen, Township Fifty-six, Range eighteen, containing one hundred acres, in Chariton County, Missouri.

"Eighth: I give, bequeath and devise to Mr. W. A. Thomas and his wife, Mrs. Judith Thomas, of Chariton County, Missouri, the West half of the Northeast quarter of Section twenty-eight, Township Fifty-six, Range eighteen, containing eighty acres, in Chariton County, Missouri.

"I have made the foregoing gifts to Mr. and Mrs. W. A. Thomas and their son and daughter on account of the many kindnesses shown to me and to my mother who was sick and in poor health for so many months."

The will was written and signed on February 22, 1933. The testator died on April 2, 1937. In due time the will was admitted to probate in the Probate Court of Chariton County, and Mrs. Judith Thomas, one of the defendants (appellants), was appointed executrix. Thereafter, this suit was brought. The parties joined as defendants were Judith Thomas, as Executrix of the will, and Judith Thomas and W. A. Thomas, as legatees under the Fourth and Eighth Items of the will. The cause was tried in the Circuit Court of Chariton County, and the court rendered judgment for the plaintiffs and against the defendants; holding in effect that the sum of $1000 should be paid to the Methodist Episcopal Church prior to the receipt by defendants W. A. Thomas and Judith Thomas of any articles or

sums of money under and by virtue of the provisions of the Fourth Article of said will, and that the second sentence of the Fourth Article of said will was not intended by the testator to be a specific bequest of the items of personal property therein mentioned, but was intended by him to be a general description of the personal property of his estate. An appeal was perfected to this court.

The trial court considered there was sufficient ambiguity and uncertainty in the language of the will as to justify the hearing of oral testimony in aid of a proper construction of the will.

It appears from such oral testimony that testator, J. O. Bell, was a farmer living in Chariton County, and had been reasonably successful in a business way. He had no children. His wife and his mother and father had predeceased him, leaving only distant relatives. For a number of years testator's mother was an invalid, and his wife in poor health. During this period of time, the appellants Judith Thomas and her husband, were close neighbors and for a number of years were of great assistance to the testator in the care and attention which his mother and wife required. After the death of the wife and mother, he lived in the home of appellants Judith Thomas and W. A. Thomas for some time before his death. They gave him every care and attention, apparently treating him as though he were a member of their own family.

It further appears from this oral testimony that a short time before the signing of the will, the deceased visited the office of J. A. Collet, an attorney at Salisbury, who had been a life-long friend and attorney for the deceased and his father. At the time of that visit, testator told Mr. Collet that he wanted him to prepare his will, but Mr. Collet was busy at that particular time and the testator was in a hurry to go home, and promised to return at a later date. However, during that short conference, the testator told Mr. Collet that he, the testator, had a note signed by the Thomases, and secured by deed of trust on their land, and he wanted to make sure that that note would not have to be paid by them. That he wanted to make some other bequests that he felt obliged to make and that he was going to undertake to substantially reward the Thomases for their kindnesses. Testator did not return to Collet's office, but some time thereafter called to see his banker, H. E. Trader, at Marceline. At that time, he discussed with Mr. Trader the matter of writing his will, and Trader suggested that he have his attorney do it. Shortly thereafter, testator became ill and was taken to a hospital at Marceline. While there, he had his friend and neighbor, Mrs. Thomas, request Mr. Trader to come to the hospital and prepare his will. Trader did so, but told testator that he would want the will sent to Mr. Bell's attorney, Mr. Collet, for approval. The will was prepared and signed as above set out, and some one sent it to Collet for examination.

It will be kept in mind that the will was prepared and signed on

February 22, 1933. Testator recovered from his illness and did not die until April 2, 1937. There were no changes made in the will during that four-year period.

At the trial of the case, the will was read in evidence and the final settlement of the Executrix, which was filed in the probate court, but not approved by that court before this suit was filed, was admitted.

After the payment of his debts and the costs of administration, there was not sufficient personal property to pay the Methodist Church its bequest of $1000, and also deliver to the Thomases their note of $2400, referred to in the Fourth Item of the will. Therefore, this suit praying for a construction of the will and a determination of whether the $2400 note mentioned in Article Four of the will was a specific legacy or not.

Appellants assert there is but one question for determination in this case and that is: "Did the mention of this particular $2400 note grouped as it was with the general description of the other personal property of testator (in the residuary clause) constitute this a specific devise or not?" Respondents agree that that is the sole issue.

The appellants base their argument upon the theory that the specific mentioning of the $2400 loan which the testator had on land belonging to the appellants was such language as to distinguish that particular item of property from all other of the testator's property, so as to identify it and set it apart from the other property general referred to in the will, thereby making it a "specific bequest or legacy." Respondents assert the contrary.

This court cannot know to a certainty the inner thoughts and purposes of the testator at the time he wrote and signed the will. We must arrive at his intentions from the language of the will, aided by oral testimony, if such be necessary.

The general rules for the interpretation of a will are well settled and familiar. It is the application of those rules to the facts of the given cause which is attended with difficulty. But whatever the point at issue may be, the intention of the testator must govern, and the language used by him must be given its plain and ordinary meaning. [Fidelity National Bank & Trust Company v. Hovey, 319 Mo. 192, 5 S. W. (2d) 437; In re Calnane's Estate, 28 S. W. (2d) 420.] It is not a question of what the court may think the testator should have done or said in his will, but of what he did say.

Many legal writers have undertaken to clearly define what is meant by the term "specific bequest or legacy" and what is a "general bequest or legacy," and while there is considerable contrariety in such definitions, nevertheless, it appears that the great weight of judicial authority is to the effect that the legal question, whether a bequest or legacy is "specific" or whether it is "general," in the final analysis is referable in each and every case, to the intent of the

testator as gathered from the "four corners of the will." [Fidelity National Bank & Trust Company v. Hovey, *supra*.]

In construing the intent as expressed in this will, we must keep in mind that the courts favor "general bequests" and are inclined to lean against "specific bequests." In the case of Bank & Trust Company v. Hovey, *supra*, the Supreme Court said on this point:

"Because of such peculiar and distinctive attributes of a specific bequest, it is sometimes said that there exists a judicial bias against specific legacies, and that the courts favor general bequests; in other words, it is said that the courts lean against the construction of a testamentary bequest as special and specific, and are inclined toward the construction of such bequest as general, unless the will of the testator, construed from the four corners, makes it reasonably clear that a special or specific bequest was intended."

Now with such general principles in mind, what was the intention of the testator as expressed in this will? The very arrangement of its contents, and the orderly manner in which it is written is worthy of notice. He first directs the payment of his debts and funeral expenses; then a bequest of $100 for the upkeep of the Bell family cemetery; and third, a bequest of $1000 to the Methodist church to be used as the Board of Trustees see fit. Then by Article Four he bequeathes to W. A. Thomas and Judith Thomas "all of the *remainder* of my personal property of every kind." What "remainder" is he referring to if it is not the personal estate remaining after the payment of his debts and the two prior bequests? Immediately following the bequest of the "remainder" of his personal property is this language, which gives rise to this controversy:

"I intend this bequest to include all of my livestock and farming implements, all money, notes and mortgages, including the $2400.00 loan I hold on their farm, and all of my life insurance money which is payable to my estate, and any other personal property that I may own at the time of my death."

He says he "intends this bequest;" What bequest is he referring to, or can he refer to, other than the general bequest of all of his personal property remaining in the residue of his estate? It is our opinion the last above-quoted language is a mere enumeration of particulars making up the residue. The Supreme Court of Michigan had before it for construction a somewhat similar residuary clause, and that court construed the language in that will as merely identifying the property specifically mentioned as being a part of his residuary estate. [Kemp v. Dandison, 135 N. W. 270.] A similar construction is made in the case of Bothamley v. Sherson, 20 L. R. Equity Cases, 304.

The language of this will is plain and simple and the purposes which the testator had in mind seem clear. He first provides for the payment of his debts and funeral expenses, and then provides for the

upkeep of the family cemetery, and then makes a bequest to the church, and after having provided for such commendable purposes, he bequeathed all of the "remainder" of his personal property of "every kind" to the appellants. The language which immediately follows the residuary clause is a mere amplification or explanation of the personal property which may become a part of the residue.

We have carefully read the authorities cited by appellants to sustain their claim, but such authorities do not support the construction which appellants contend should be given the will now under consideration. It is true those cases announce certain general principles for the construction of wills, and give broad definitions of "specific legacies" and "general legacies," with which general definitions we have no quarrel, but to a very great extent each will must be construed in the light of its own wording and the surrounding circumstances and independent of other wills. The language which appellants rely on in this will as evidencing testator's intention of making "a specific bequest" of the $2400 note is found in the general residuary clause, and this fact aids in distinguishing the intentions contained in this will from those considered in the cases relied on by appellants, as well as from most of the other similar reported cases.

Appellants make an able argument based on the oral testimony in this case, but it must be kept in mind that oral testimony in cases of this sort is restricted in its force. A will cannot be written for the testator by oral testimony. It is limited in its effect to whatever light it might throw on the intentions of the testator. In the case of Roe v. Strother, 111 S. W. (2d) 93, l. c. 96, the Supreme Court said:

"Such extrinsic evidence is admissible solely for the purpose of ascertaining the testator's intention from the language he has used. It cannot be heard to show that he meant one thing when he said another or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to make, but did not in fact make. However may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution."

We do not find anything in the oral testimony which would justify a different construction of this will than that arrived at. We do not decide whether such oral testimony was properly admissible in aid of the construction of this will because no point was made of it in the trial court or in this court.

From the plain language of this will, it cannot be said that the testator specifically bequeathed the $2400 loan to the Thomases; what we think he intended to do, and what he did do, was to bequeath to the Thomases all the "remainder" of his personal property "of every kind," after the payment of his debts and the bequests to the cemetery and church. Keeping in mind the obligation resting upon us to ascertain and carry out the intention of the testator, we cannot

escape the conviction that Mr. Bell intended the Methodist Church to be paid $1000 before the Thomases would take anything under the residuary clause.

We conclude that the trial court correctly construed this will. It follows, therefore, that the judgment appealed from should be affirmed. *Shain, P. J.,* and *Bland, J.,* concur in the result; *Bland, J.,* in a separate opinion in which *Shain, P. J.,* concurs.

### CONCURRING OPINION.

BLAND, J.—The record fairly discloses that this cause was tried on the theory that the will is ambiguous and that extrinsic evidence was competent. Examining this evidence I find it conflicting. The testimony of Mr. Trader, if believed, clearly and unmistakably, shows that the intention of the testator was as found by Judge CAVE in his opinion. Consequently, I do not feel that we should disagree with the conclusions reached by the trial court. [Hunnell v. Zinn, 184 S. W. 1157.]

Therefore, I concur in the result reached in Judge CAVE's opinion. *Shain, P. J.,* concurs in this opinion and the result.