IN RE ESTATE OF PETER T. LEPLEY.

JESSIE E. LEPLEY, Executrix, et al., Appellants, v. FRANCES BOGUE et al., Appellees.

No. 46650.

FEBRUARY 6, 1945.

R. R. Bateson, of Eldora, for Jessie E. Lepley, executrix, appellant.

B. B. Burnquist, of Fort Dodge, for Jessie E. Lepley, Julia Lepley Smith, and Lucile Smith, appellants.

Lundy, Butler & Lundy, of Eldora, for appellees.

MULRONEY, J.—The will of Peter T. Lepley, deceased, which the trial court was asked to construe, contained the following clauses:

## I.

"I desire and direct that all my just debts and funeral expenses be first paid from my estate.

## II.

"I give, devise and bequeath to my wife, Jessie E. Lepley, all of the personal property of whatsoever kind or nature of which I die seized. She to have the same absolutely without reservation.

## III.

"I give, devise and bequeath to my wife, Jessie E. Lepley, for the period of her natural life the following described real estate towit: The Southwest quarter of the southeast quarter of Section 20, Township 86 North, Range 20 West of the 5th P. M., Hardin County, Iowa, the same being my homestead, with remainder to my daughter Julia Lepley, she to receive the fee title to the same on the death of the said Jessie E. Lepley.

## IV.

"I give, devise and bequeath to my wife, Jessie E. Lepley, for the period of her natural life, the following described real estate towit: The South half of the southwest quarter of Section 20, and the northwest quarter of the northeast quarter of Section 29 and the northwest quarter of Section 29; all in Township 86 north, Range 20 West of the 5th P. M., Hardin County, Iowa, with remainder to the following named children, share and share alike: Frances Bogue, Clare Lepley, Millet [Willet] Lepley and Lucile Smith; they to receive the fee title to the same at the death of the said Jessie E. Lepley, share and share alike. And in the event that any one of the beneficiaries named in this my last will and testament shall not be living at the time they would receive title, as above set out, it is then my will that the legal heirs of the said beneficiary shall receive the deceased beneficiary's share.

## V.

"All the rest, residue and remainder of my estate of whatever kind or nature, and whether real, personal or mixed, I give, devise and bequeath to my wife, Jessie E. Lepley."

The will was executed on February 5, 1934, and on November 16, 1935, the Northwest Quarter of Section 29, part of the land described in Clause IV of the will, was sold by decedent. Decedent died March 23, 1943. The remaining farm land was mortgaged to the Federal Land Bank of Omaha and its commissioner as security for notes of $5,000 and $2,500, respectively.

The executrix of the above will, Jessie E. Lepley, as executrix and in her individual capacity, and Julia Lepley Smith and Lucile Smith sought, by appropriate pleadings, a construction that the will required the subjection of the real estate described in Clause IV to the payment of the mortgage against the realty. Frances Bogue, Clare Lepley, and Willet Lepley, children of the decedent by a former marriage, by proper pleadings, asserted the will was not ambiguous; that the bequest of personalty was a general bequest, and that the debts secured by the mortgages on the land specifically devised in Clause IV must be satisfied out of the personalty rather than from the real estate.

By agreement the entire controversy was tried in equity and the trial court rendered a decree in favor of Frances Bogue, Clare Lepley, and Willet Lepley, hereinafter called the defendants; the decree providing for payment of the mortgage debts from the personalty. The executrix and those who joined with her, hereinafter called the plaintiffs, appeal.

It is stipulated that the personal property in the estate was sufficient to pay all debts against the estate, including the mortgage indebtedness, which at the time of decedent's death was in the total sum of $6,040.44. The widow elected to take under the will and she and decedent's lawyer, who drew the will, testified at the trial with respect to matters that might explain the testator's intent at the time the will was executed. This evidence tended to show an intention on the part of testator to refinance his obligations into long-term loans before executing his will so that "they [the debts] won't hurt anybody." There was also testimony of statements by decedent, made about the time of the execution of the will, that he wanted to be sure his wife had all of his personal property. The record further shows that when he executed the will he had but a small amount of

personal property, and mortgage obligations totaling $20,000, and a cottage at Okoboji, which he later sold for $1,100. The sale of the Northwest Quarter of Section 29 netted the decedent $7,000 more than the mortgage lien against it or more than enough to pay the mortgage encumbrance on the remaining land at the time of his death.

I. Defendants do not argue the proposition as to whether the bequest to the widow in Clause II of the will of "all of the personal property * * * of which I die seized * * *" is general or specific. We consider the question basic for the determination of the controversy.

We said, in In re Estate of Hartman, 233 Iowa 405, 408, 9 N. W. 2d 359, 361:

"A specific legacy is a bequest of a particular thing that can be distinguished from others of the same kind. A general legacy does not direct the delivery of some particular thing. Parsons v. Reel, 150 Iowa 230, 231, 129 N. W. 955; 69 C. J. 919, 921, sections 2085, 2086."

Authorities from other jurisdictions seem to be uniform in holding that a bequest of all of testator's personal property is general. A number of such authorities are collected in the annotation in 88 A. L. R. 553, and the rule as to personal property is thus stated (loc. cit. 554):

"The rule sanctioned, seemingly without dissent, by the cases, is that, in the absence of a clearly expressed intention of the testator to the contrary, a bequest of all of the testator's personal property, an aliquot portion of it, the remainder of the personal property, or any bequest in similar general terms, is a general and not a specific legacy."

It is our conclusion that the bequest in Clause II of the will of all the testator's personal property to the widow was a general bequest. Of course, the devises in Clauses III and IV of specifically described parcels of realty were specific. The question, then, is whether the personal estate which was the subject of a general bequest must bear the burden of all the debts, including the mortgage indebtedness covering real estate which

was the subject of a specific devise, or should the real estate bear the burden of paying the mortgage indebtedness against it.

██ II. Plaintiffs point to the fact that no claims were filed for these mortgage debts and they contend that under the statutes (sections 11969, 11970, and 11972, Code of 1939) providing for the filing and payment of claims, the defendants are barred from enforcing their demands that these debts be paid. The contention is answered by our holding in In re Estate of Brackey, 166 Iowa 109, 117, 147 N. W. 188, 191, where we held such statutes do not govern and that they relate "only to the rights of a creditor seeking to enforce his claim against the estate in the hands of the executor." See, also, Toner v. Collins, 67 Iowa 369, 25 N. W. 287, 56 Am. Rep. 346, and Ganoe v. Swisher, 229 Iowa 130, 294 N. W. 235.

██ III. Plaintiffs' next contention is that under section 11977, Code of 1939, the executrix is not obliged to pay this mortgage indebtedness and the payment would not be permitted "unless so determined by the Court." This section empowers the personal representative, subject to court approval, to use estate funds to pay off encumbrances on the deceased's realty. Plaintiffs' contention here made is not fortified by authority or argument and we hold the statute has no application. Obviously, the statute is designed to allow action that will preserve the corpus of the estate and it is not apparent to us how a consideration of this statute will aid plaintiffs' position in this controversy.

██ IV. Plaintiffs argue that the will is concededly ambiguous. We have examined the record with care and we find no such concession on defendants' part. They do ask that the will be legally construed to exonerate the realty from the mortgage debts, but they do not concede that it is ambiguous. But plaintiffs state in their brief:

"The Will is ambiguous in this respect: If the mortgage obligations were intended to be debts to be paid out of the estate, then the widow of the decedent cannot receive 'all of the personal property of whatsoever kind or nature of which I die seized. She to have the same absolutely without reservation.', as provided in Paragraph II of the Will."

There are two kinds of ambiguity; patent and latent. A patent ambiguity is that which appears on the face of the will and arises from the phraseology or the defective, obscure, doubtful, or uncertain language. It arises upon the reading of the will. A latent ambiguity exists where the language of the instrument does not lack certainty but some extrinsic or collateral matter outside the will renders the meaning obscure and uncertain. A classic example is a bequest in a will "to my cousin John" when the testator has two cousins named John. See 24 Words and Phrases, Perm. Ed., Latent Ambiguity, and 31 id., Patent Ambiguity.

Of course, there is no patent ambiguity between the first and second clauses of the will. The first clause providing for the payment of all just debts is a very common clause in a will. Since no fund is designated from which the payment of debts is to be made, then it must be presumed the testator intended the payment to be made from the fund which the law provides shall be used for the payment of debts.

With no ambiguity apparent on the face of the will, we will give it its legal construction and this will control unless the testimony shows some latent or hidden ambiguity. The legal construction of such a will is that the personal property, generally bequeathed, is to bear the debt burden. In Wilts v. Wilts, 151 Iowa 149, 154, 130 N. W. 906, 908, we stated:

"The rule established in chancery generally prevails that property of decedent should be applied to the satisfaction of his debts in the following order, when neither statute nor the will prescribes a different order: (1) The personal estate, except specific bequests or such of it as is not exempt from the payment of debts; (2) the real estate which is appropriated in the will for such payment; (3) the real estate descended; (4) real estate specifically devised."

As we have heretofore pointed out, the personal-property bequest was not specific. Being a general bequest it must bear the debt burden. We do not understand that plaintiffs argue otherwise with respect to any unsecured debts. But the law makes no distinction between secured and unsecured debts. See

In re Estate of Brackey, supra, 166 Iowa 109, 113, 147 N. W. 188, 190, where we stated:

"The law places upon the personalty not only the primary duty of paying general debts and legacies, but of exonerating the realty devised from mortgages and other liens of the testator * * *. The personal estate is a primary fund for the payment of debts of decedent, and, in order that the personal estate be relieved, the intention to relieve it must appear affirmatively in the will."

See, also, Toner v. Collins, supra, 67 Iowa 369, 25 N. W. 287, 56 Am. Rep. 346; annotations at 5 A. L. R. 488; 120 A. L. R. 577.

This, then, is the legal construction of the will, but the plaintiffs argue that a latent ambiguity existed. The argument seems to be that this legal construction of the plain and unambiguous words in the will is inconsistent with deceased's financial situation and with statements of the deceased at the time the will was drawn.

██ But such evidence would not indicate any ambiguity. It might indicate that the testator did not intend to say what he did say in the will, but the courts cannot draw his will for him. As was said in Methodist Episcopal Church v. Thomas, 235 Mo. App. 671, 678, 145 S. W. 2d 157, 161:

"* * * it must be kept in mind that oral testimony in cases of this sort is restricted in its force. A will cannot be written for the testator by oral testimony."

The opinion in the Methodist Church case quotes with approval the following pertinent language from earlier Missouri decisions, Rowe v. Strother, 341 Mo. 1149, 1154, 111 S. W. 2d 93, 96, and McCoy v. Bradbury, 290 Mo. 650, 658, 235 S. W. 1047, 1049:

"* * * such intrinsic [extrinsic] evidence is admissible solely for the purpose of ascertaining the testator's intention from the language he has used. It cannot be heard to show that he meant one thing when he said another, or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to make, but did not in fact

672

make. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution.''

The point can be illustrated by the earlier hypothetical case of the bequest in the will to the testator's cousin John. If the testator had but one cousin John, then no amount of testimony to the effect that the testator meant and intended the bequest to go to another cousin, William, would create an ambiguity that would warrant a judicial interpretation that would disinherit John and make William a legatee. Since no ambiguity is apparent on the face of the will, and no latent ambiguity is developed by the testimony, the legal construction of the will as written controls and the mortgage indebtedness is payable out of the personalty.

Because we hold that no ambiguity existed, there is no need to discuss the authorities cited by the plaintiffs announcing the rules that should govern the construction of ambiguous wills. The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.