**In re ESTATE OF Blanche M. KIEL, Deceased.**

**Hubert A. KIEL, Individually and as Executor of the Estate of Blanche M. Kiel, Deceased, Appellee,**

v.

**Lois SCHUCHMANN, Individually and as Executor of the Estate of Blanche M. Kiel, Deceased, Appellant.**

No. 83–571.

Supreme Court of Iowa.

Nov. 14, 1984.

J.D. Villont of Donohue Law Office, P.C. West Union, for appellant.

Alice T. Koempel of Traeger & Koempel, West Union, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, CARTER, and WOLLE, JJ.

HARRIS, Justice.

The question is whether a bequest of "the first $24,000 of my estate" was satisfied by certificates of deposit held in joint tenancy by decedent and a devisee. The trial court held it was. We disagree.

Plaintiff Hubert and defendant Lois are brother and sister. Except for a $24,000 bequest to Lois, they share equally under the will of their mother, Blanche. Because of $24,000 previously given to Hubert, Blanche's will provided:

It is my will that my daughter, Lois Schuchmann, shall receive the first $24,-000 of my estate and the balance, if any, shall be divided equally between my children, Hubert A. Kiel, and Lois Schuchmann, the same to be their absolute property ....

A number of certificates of deposit were found in Blanche's bank box after her death. Included were a total of $26,250 which were held in joint tenancy by Blanche and Lois. Another $7,750 were held in joint tenancy by Blanche and Hubert. All the certificates were purchased by Blanche. Lois testified she knew nothing of the certificates prior to her mother's death.

In a petition to construe the will, Hubert asserted that the phrase "the first $24,000 of my estate" is ambiguous. He argued it refers to assets, some of which are subject to probate, and some of which (i.e., the certificates of deposit) are not. According to Hubert it was Blanche's intention that all jointly held property was to be taken into account in computing "the first $24,-000" which Lois was to receive under the will.

The trial court agreed, finding the will ambiguous, not as a result of any specific provision in it, but because

it appears to this court ... that the attempt of the decedent as shown by the record was to divide her entire estate evenly between her two children ....

The court went on to hold that the "estate" consisted of all property owned by Blanche, including the joint tenancy certificates of deposit. The ruling effected an equal division between Hubert and Lois of all Blanche's assets, both probate and non-probate.

On Lois' appeal, the matter was transferred to the court of appeals which, with two judges dissenting, reversed the trial court. We granted further review.

■ I. Our review is de novo. *Matter of Estate of Kruse*, 250 N.W.2d 432, 433 (Iowa 1977). In a de novo review we make findings of fact anew; however, when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but are not bound by them. *Russell v. Johnson*, 327 N.W.2d 226, 228 (Iowa 1982). *See* Iowa R.App.P. 14(f)(7).

■ II. Hubert's case rests on his assertion that the will is ambiguous. Our first duty, then, is to determine if an ambiguity exists because only when it does is a testator's subjective intent a proper subject of inquiry. *In re Estate of Thompson*, 164 N.W.2d 141, 146 (Iowa 1969).

■ We have said "where the terms of a will are plain and unambiguous, a construction ... by the court is unnecessary." *Anderson v. Anderson*, 227 Iowa 25, 32, 286 N.W. 446, 449 (1938). Resort to extrinsic circumstances is not then allowed. *Id.* Hence, where there is no patent ambiguity, a will must be construed as written unless some latent or hidden ambiguity appears. *In re Estate of Lepley*, 235 Iowa 664, 670, 17 N.W.2d 526, 529 (1945).

■ Inappropriate suggestions are often made under the guise of a claimed ambiguity. We have disapproved or rejected a number of them. For example, a court may not, under the guise of ambiguity, add to the provisions of a will. *In re*

*Estate of Winslow,* 259 Iowa 1316, 1323, 147 N.W.2d 814, 818 (1967). A court may not, under the guise of ambiguity, make or remake the will of a testator. *In re Estate of Zang,* 255 Iowa 736, 738, 123 N.W.2d 883, 884 (1963). A court may not, under the guise of ambiguity, inquire into the wisdom of the testator's distribution. *Eckles v. Lounsberry,* 253 Iowa 172, 185, 111 N.W.2d 638, 646 (1961). Finally, a court may not, under the guise of ambiguity, implement broad principles of equity and justice. *In re Estate of Fairley,* 159 N.W.2d 286, 288 (Iowa 1968).

■ We make no apology for these rules; they are rooted in the statute of wills and proceed from clear public necessity. Obviously, after a will is admitted to probate, a testator cannot testify. Intent should therefore be gleaned from the words of the will. Thus, we have said:

> Where the language is clear, both in expression and meaning, rules of construction are inapplicable.

*Lytle v. Guilliams,* 241 Iowa 523, 525–26, 41 N.W.2d 668, 670, 16 A.L.R.2d 1377, 1380 (1950).

■ III. We find no merit in Hubert's argument that the word "estate" is patently ambiguous. The word does have varied meanings but when used in a will it is commonly understood to refer to the property and ownership interests which pass to a personal administrator at death and are devisable by the will.[1] *See, e.g., Wolf v. Wolf,* 152 Iowa 121, 130, 131 N.W. 882, 885–86 (1911).

■ Property held in joint tenancy is not devisable by the will. It is not a part of the estate. *Hyland v. Standiford,* 253 Iowa 294, 303, 111 N.W.2d 260, 266 (1961). *See In re Estate of Boldt,* 342 N.W.2d 463, 466 (Iowa 1983). To hold otherwise would establish dangerous precedent. Nearly all wills refer to the testator's estate. If we were to allow the word "estate" to be challenged on patent ambiguity grounds there would be few wills impervious to challenge. Nothing on the face of Blanche's will appears which can be said to be confused, inexact, or with double meaning. There is nothing to Hubert's claim that the ambiguity he urges is patent.

■ IV. Hubert also argues the ambiguity is latent. Extrinsic evidence is admissible to show a latent ambiguity exists. *See Widney v. Hess,* 242 Iowa 342, 352, 45 N.W.2d 233, 239 (1950). But the extrinsic evidence in such a case is admitted only for that narrow purpose. No inquiry into the testator's intent by way of extrinsic evidence is appropriate until after existence of the ambiguity has been established. *In re Will of Faber,* 259 Iowa 1, 7, 141 N.W.2d 554, 557 (1966).

Hubert contends the meaning of the word "estate," in this instance, cannot be known from the words contained within the four corners of the will. He thinks extrinsic evidence must be received to shed light on Blanche's intent, especially on her meaning of the work "estate."

The difficulty with Hubert's contention is that he offers evidence, not to clarify the term, but to obscure it. He seeks by the evidence to show Blanche's private understanding. His evidence is that Blanche meant to treat Lois and him "equally." In order to carry out Blanche's intent, he argues, the word "estate," as used in the will, must be defined as comprising both probate and non-probate assets.

■ There is no latent ambiguity. Latent ambiguities arise where either the subject of the devise or the devisee is ambiguous. *See In re Estate of Syverson,* 239 Iowa 800, 806–07, 32 N.W.2d 799, 802–03 (1948). Blanche made an unqualified bequest for $24,000. Hubert nevertheless

---

1.  Nothing in the statutory definition, Iowa Code section 633.3(15), bears on the question presented.

insists there is something in the wording of the bequest which renders it ambiguous. Yet, to establish his claimed ambiguity, he points to his extrinsic evidence, not to the words themselves. Certainly there is no obscurity in the words themselves. This is true despite the fact that Blanche may have signed the will thinking the certificates of deposit would be included in her estate. It is enough for us to say she was wrong.

However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved in the execution.

*In re Estate of Lepley,* 235 Iowa at 672, 17 N.W.2d at 529–30. In other words:

The question is not what the testator meant to say but what she meant by what she did say.

*In re Estate of Winslow,* 259 Iowa at 1322, 147 N.W.2d at 818 (terms of will are binding even though scrivner's error is established).

V. We have not ignored Hubert's claim that the certificates of deposit are not held in joint tenancy. This contention is also without merit. The issue is controlled by *Petersen v. Carstensen,* 249 N.W.2d 622 (Iowa 1977). There we pointed out the existence of a rebuttable presumption:

[a] depositer intends to create a joint tenancy when he makes a deposit in the names of two individuals, payable to either, or payable to either or the survivor.

*Id.* at 625. Hubert did not offer substantial evidence to rebut the presumption. There is some evidence to the contrary but it is slight, not substantial. Thus, the joint tenancy exists as a matter of law. *Id. See also In re Estate of Roehlke,* 231 N.W.2d 26, 28 (Iowa 1975).

The terms of Blanche's will are not ambiguous. The certificates of deposit are held in joint tenancy.

JUDGMENT OF THE COURT OF APPEALS AFFIRMED; JUDGMENT OF THE TRIAL COURT REVERSED; CASE REMANDED.