# IN THE COURT OF APPEALS OF IOWA

No. 23-0773
Filed November 21, 2023

**AMY EILEEN GUITER,**
    Plaintiff-Appellant,

**vs.**

**DIANE LEE MEINECKE, Personally and as Executor of the ESTATE OF HAL DEAN MEINECKE,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dallas County, Randy V. Hefner, Judge.

A granddaughter appeals the district court's ruling that the sale of real estate by her grandmother was valid under her grandfather's will. **AFFIRMED.**

Billy J. Mallory and Trevor A. Jordison of Mallory Law, West Des Moines, for appellant.

David M. Repp of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, and C. Scott Finneseth of Finneseth, Dalen & Powell, PLC, Jefferson, for appellee.

Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**TABOR, Presiding Judge.**

Amy Guiter appeals a district court ruling that upheld the sale of farmland her grandfather left to her grandmother as a life estate. Guiter asks us to find that the sale was "null and void" because it did not comply with the terms of her grandfather's will. Because Guiter fails to show the land sale violated the terms of the will, we affirm the ruling.

## I. Facts and Prior Proceedings

George Meinecke Jr.[1] died testate on July 8, 2003. In his will, he left his wife, Roberta Meinecke, a life estate in his farm real estate with a remainder interest to their six children, per stirpes.[2] At issue is Article IV of the will, in which we have bolded the key passages:

> I give all my residuary estate, being all real and personal property, wherever situated, in which I may have any interest at the time of my death not otherwise effectively disposed of, **to my wife to have and to hold for her life, and upon her death, to my descendants who survive me, per stirpes, together with the power to sell, at public or private sale, mortgage or in any other manner dispose of such property during her life for the purpose of acquiring money for her health, support and maintenance.**
>
> My wife may exercise the power of sale given to her under this Article without court order or the consent of any person having a remainder interest in the property. **Any person dealing with my wife pursuant to this power may rely without further inquiry upon her certification that the power is being exercised in accordance with the terms of this will**, and any person receiving such certification may pay money or deliver property to my wife without any need to see to its application. This power may be exercised by an attorney in fact, conservator or other fiduciary of my wife, and all references in this Article to my wife with respect to the exercise of such power and the providing of any certification to others shall apply to any such fiduciary.

---

[1] For clarity, we refer to anyone with the last name Meinecke by their first names. We refer to George Meinecke Jr. as "George Jr."

[2] Per stirpes is Latin for "by roots" and refers to assets passing down the family tree. 23 Am. Jur. 2d *Descent & Distrib.* § 83 (Oct. 2023 update).

If my wife exercises the power given to her under this Article, she and the other beneficiaries under this Article shall have the same rights and interests with respect to the proceeds of such sale, mortgage or other disposition as they had with respect to the property sold, mortgaged or otherwise disposed of, **except that my wife shall have the right to use so much or all of such proceeds as may be necessary for her health, support and maintenance.**

Roberta survived her husband and took ownership of the property shortly after his death. Roberta's son, Hal Meinecke, died testate on April 29, 2021, with his surviving spouse, Diane Meinecke, three children, and two stepchildren as beneficiaries under his will. Included among the children was Amy Guiter. On December 29, 2021, Roberta conveyed her life-estate interest in the farm to a trust. Less than a month later, on January 24, 2022, Roberta's son, George Meinecke III, acting as her attorney in fact, along with her other children[3] signed a purchase agreement to sell the farmland to John Dawley. Shortly after the sale, Roberta died on February 17, 2022.

One month later, Guiter challenged the validity of the sale. She asserted that she had an ownership interest in the farm and the Estate did not have her consent to convey her interest. The district court set the matter for trial; the parties agreed that all evidence would be submitted by stipulation of joint exhibits. In her trial brief, Guiter asserted that "[n]owhere in the stipulated facts or any document before this Court is there any evidence that Roberta transferred the Farm Real Estate for her health, support, or maintenance." Because the Estate did not show that the farm was sold for that purpose, Guiter argued the sale was invalid under

---

[3] Diane signed as executor of Hal's estate.

the will. Guiter also noted: "Roberta did not certify that she was selling the property in accordance with the terms of the will (as required by Junior's will[4], Article IV)."

The district court rejected Guiter's claims, finding instead that Roberta had an unrestricted right to sell the farm. It reasoned that article IV of the will "unambiguously does not require such evidence as a condition to exercising the power to sell and conveying clear title to a third-party." In interpreting the will, the court found the clause permitted Roberta or her personal representative to sell the property without consent of the court or remaindermen. In the court's view, "the very specific language prohibiting the remaindermen from objecting to a sale trumps the more general language relating to the purpose of the sale." As for certification, the court found that provision of the will was not intended for the benefit of the remaindermen. Guiter appeals that ruling.[5]

## II. Analysis

Guiter argues that "[t]he district court erred in finding that Roberta could sell the farm real estate without a showing that the sale proceeds were needed for her health, support, or maintenance."[6] She devotes much of her appellant's brief to disputing the district court's interpretation of the will's terms. But even if we were to adopt Guiter's construction of the will, she cannot prevail on this record.

As the Estate argues, the stipulated exhibits did not address Roberta's purpose in selling the farmland. In fact, Guiter emphatically agrees on this point,

---

[4] Guiter refers to George Jr. as "Junior" in her brief.

[5] We review her claims de novo. *In re Est. of Anderson*, 359 N.W.2d 479, 480 (Iowa 1984).

[6] Guiter does not assert on appeal that Roberta needed the consent of any person with a remainder interest in the property to exercise her right to sell under her husband's will.

writing: "There is NO evidence in the record that Roberta signed off on the sale for that specific reason." What Guiter fails to recognize is that to invalidate the sale, she had the burden to prove Roberta *did not* sell the property "for the purpose of acquiring money for her health, support and maintenance" as provided in Article IV of the will.[7]

Absent an express standard, "the burden of proof on an issue is upon the party who would suffer loss if the issue were not established." *Graber v. City of Ankeny*, 616 N.W.2d 633, 642 (Iowa 2000); *see also In re Hunt's Est.*, 129 N.W.2d 618, 623 (Iowa 1964) ("The general rule is that the burden of pleading and proof rest upon the same litigant."). Further, contestants in estate cases generally bear the burden of proof. *See Rine v. Wagner*, 113 N.W. 471, 473 (1907) ("[T]he burden is upon the contestant to show that his case comes within the terms of the limitation or exception." (citation omitted)), *overruled on other grounds by Nat'l Bank of Burlington v. Huneke*, 98 N.W.2d 7 (1959); *In re Small's Est.*, 58 N.W.2d 477, 480 (1953) (placing burden of proof on petitioners seeking to establish that testamentary provision of will was invalid); *see also In re Johnson's Est.*, 269 N.W.2d 792, 796 (1936) (finding burden was on contestants to show invalidity of will).

In line with that authority, Guiter had the burden to produce evidence showing that Roberta did not intend to use the sale proceeds for her health, support

---

[7] Guiter contends George Jr. conveyed through his will that "he wanted the Farm Real Estate to go to his kids unless Roberta needed to sell the property" for her health, support, or maintenance. The Estate objects to the insertion of the term "need" and counters that Roberta "only had to use the sale proceeds for her health, support and maintenance. . . . If Roberta did not want to use her other personal resources for her health, support and maintenance, she didn't have to."

and maintenance. But Guiter did not do so. Without such evidence, we cannot presume that the purpose of the sale was for something other than Roberta's welfare.[8] So assuming without deciding that the language of the will restricted Roberta's power to sell the real estate—except to acquire money for her health, support, and maintenance—we find that Guiter has not met her burden to prove Roberta executed the sale for a different purpose.

One last point. Guiter cannot benefit from the lack of certification that the sale was to acquire money for Roberta's health, support, and maintenance. The reference to "certification" in the will applies only to "any person dealing with [Roberta] pursuant to [her power of sale]." The certification provision was for persons "paying money or delivering property" to Roberta. It was not a protection for persons having a remainder interest in the real estate or their beneficiaries. The certification language in George Jr.'s will is clear. *See In re Est. of Kiel*, 357 N.W.2d 628, 630 (Iowa 1984) ("[W]here there is no patent ambiguity, a will must be construed as written unless some latent or hidden ambiguity appears."). Therefore, we must construe it as written. Because Guiter is not the purchaser of property, the provision does not apply to her.

---

[8] In resisting Guiter's motion to reconsider, the Estate noted that the district court could not make a factual determination that the sale was not for the purpose allowed by the will, "because no evidence was so presented." The Estate continued: "This does not mean that no such evidence exists. Quite to the contrary, George Meineck[e], III, was ready to testify that a need did exist; a certification was executed and offered as a stipulated exhibit, but the Plaintiff objected."

Because Guiter has not proven that Roberta lacked the power under the will to sell the farm real estate, we affirm the district court.

**AFFIRMED.**