# ESTATE OF WM. G. WILLIAMS.

## Kansas City Court of Appeals, May 6, 1895.

1. **Descent and Distribution:** CUSTOM OF LONDON. The custom of London divided the freeman's personal estate into three parts: One for the widow; one for the children, unadvanced by him in his lifetime, and one called the dead man's share that he might dispose of by will. A child not fully advanced, by bringing the amount advanced into hotchpot, shares with the others.

2. ———: DEFINITIONS: ADVANCEMENT. In the statute of distribution, advancement means money or property given a child in anticipation of inheritance.

3. ———: ———: HOTCHPOT. Hotchpot, in the old common law, meant that lands given in frank marriage and descending in fee simple should be mixed and divided in equal proportion among all the daughters.

4. ———: STATUTORY CONSTRUCTION: CHILDREN AND GRANDCHILDREN. While section 4470, Revised Statutes, 1889, requires only children of an intestate who have received advancements to bring the same into hotchpot before they can share with the intestate's other children; yet the term children therein used should be so construed as to include the grandchildren whose ancestor has received an advancement in his lifetime.

5. ———: ———: ———. Grandchildren whose father died before their grandfather, inherit from their grandfather; but their right to inherit is representative in its character and measured by that of their father if he were living. *Barnum v. Barnum,* 119 Mo. 63, *distinguished.*

6. **Administration:** APPEAL: JURISDICTION. *Held,* since the appeal bond was approved by neither the probate court nor the judge thereof in vacation, the circuit court acquired no jurisdiction of the appeal.

### ON MOTION FOR REHEARING.

7. ———: ———: ———: IRREGULARITY. If an appeal be granted where no bond is filed, or if filed, it be defective, the circuit court acquires jurisdiction, as this is a mere irregularity.

8. ———: ———: ORIGINAL OR APPELLATE JURISDICTION: APPEARANCES. If the circuit court have original jurisdiction and the parties voluntarily appear, though the appeal confers no jurisdiction, yet the court acquires jurisdiction by virtue of the appearance; but, where the court's jurisdiction is exclusively appellate, the court does not acquire jurisdiction by appearance of the parties.

*Appeal from the Gentry Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

REVERSED AND REMANDED (*with directions*).

*McCullough & Peery* and *Ed. S. Gibbany* for plaintiffs in error.

(1) The circuit court had no original jurisdiction of this proceeding. That jurisdiction is vested by statute exclusively in the probate court. R. S. 1889, art. 2, chap. 1; *Dodson v. Scroggs*, 47 Mo. 285; *Cones v. Ward*, 47 Mo. 289. Therefore, the circuit court could only acquire jurisdiction of the subject-matter by an appeal regularly taken from, and granted by, the probate court. Consent of parties can not confer jurisdiction in such case. *Whitehead v. Cole*, 49 Mo. App. 428; *Green v. Castello*, 35 Mo. App. 127; *Robinson v. Walker*, 45 Mo. 117; *Moore v. Minkler*, 3 Mo. App. 596; *Bauer v. Cabanne*, 11 Mo. App. 114; *McQuoid v. Lamp*, 19 Mo. App. 153; *Ewing v. Donnelly*, 20 Mo. App. 6; *Devore v. Staecker*, 49 Mo. App. 547; *Hastings v. Hennessey*, 52 Mo. App. 172; *DeSoto v. Merciel*, 53 Mo. App. 57; *Kelm v. Hunkler*, 49 Mo. App. 664; *Brown v. Moody*, 64 Mo. 547; *Garnett v. Rogers*, 52 Mo. 145; *Tarwater v. Long*, 36 Mo. App. 182. (2) The record fails to show that any appeal to the circuit court was ever granted by the probate court, nor does it show any order to that effect; hence the circuit court (having no original jurisdiction) never acquired jurisdiction of this proceeding. *Meyers v. Meyers*, 19 Mo. App. 140; *Newman v. Biggs*, 78 Mo. 675; *Waddell v.*

*Blackiston,* 59 Mo. 120; *Clark v. Railroad,* 84 Mo. 129 ; *Tarwater v. Long,* 36 Mo. App. 182; *Robinson v. Walker,* 45 Mo. 117; *Green v. Castello,* 35 Mo. App. 127; *Kelm v. Hunkler,* 49 Mo. App. 664; *Swank v. Swank,* 85 Mo. 198; *Bray v. Marshall,* 66 Mo. 122; *Baker v. Railroad,* 36 Mo. 543; *Fields v. Mohey,* 78 Mo. 176; *Snitzer v. Dowing,* 80 Mo. 586; *Barr v. Blomberg,* 37 Mo. App. 605; *Bank v. Moulder,* 53 Mo. App. 535; *Clelland v. Show,* 51 Mo. 440; *Neale v. Peay,* 21 Ark. 93; *Estate of Boyd,* 25 Cal. 511, 514; *Dennison v. Talmage,* 29 Ohio St. 433; *Heckertis' Appeal,* 13 Serg. & R. 48; *Claypool v. Norcross,* 36 N. J. Eq. 524; *Morrow v. Walker,* 10 Ark. 569; *Van Slyke v. Schmeck,* 10 Pai. 301; *Brown v. Hinman,* Brayt. 20; *Lambert v. Merrill,* 56 Vt. 464; *Briggs v. Barker,* 145 Mass. 287; *Dodson v. Scroggs,* 47 Mo. 285; *Cones v. Ward,* 47 Mo. 289; *Moore v. Minkler,* 3 Mo. App. 596. (3) Without a valid appeal bond, there can be no appeal from the probate court to the circuit court. The paper filed as an appeal bond was never approved by the probate court or the judge or clerk thereof. R. S. 1889, secs. 286, 288, 290; *Corbin v. Laswell,* 48 Mo. App. 639; *Slater v. Steamboat,* 10 Mo. 513; *Cockrill v. Owen,* 10 Mo. 287; *Bank v. Moulder,* 53 Mo. App. 535; *Julian v. Rogers,* 87 Mo. 229; *Parker v. Railroad,* 44 Mo. 415; *Stone v. Corbett,* 20 Mo. 350. (4) The judgment is erroneous upon the face of the record. The plaintiffs in error could not, under the facts recited, be legally charged with an advancement made to their father, who died twenty-four years before their grandfather. They inherit directly from their grandfather, and not through their father; their father, Henry F. Williams, never had any interest in the estate of William G. Williams, deceased, but the plaintiffs in error take their share in their own right, free and clear of any debts of their father, or advancements made to him.

It was, therefore, error to charge them with $600, alleged to have been advanced to their father in the year 1863. R. S. 1889, secs. 4465, 4469; *Barnum v. Barnum*, 24 S. W. Rep. (Mo.) 780; *Kendall v. Mondell*, 67 Md. 444; *Carson v. Carson*, 1 Metc. (Ky.) 300; *Ilgenfritz's Appeal*, 5 Watts (Pa.), 25; *Simpson v. Simpson*, 16 Ill. App. 170; 1 Woerner, Am. Law of Administration, p. 149; *Mann v. Mann*, 12 Heisk. 246; *Towles v. Towles*, 1 Head, 601; *Bishop v. Davenport*, 58 Ill. 105; *Kershaw v. Kershaw*, 102 Ill. 311; 2 Woerner, Am. Law of Administration, secs. 454, 555. (5) The doctrine of advancements and of hotchpot is of purely statutory origin and has no place in the common law. 2 Woerner, Am. Law of Administration, sec. 559; *Turpin v. Turpin*, 88 Mo. *loc. cit.* 340; R. S. 1889, secs. 4470, 4471. This being true, and section 4470 having no application to any but children of the decedent, it can not be extended by construction, beyond its terms, to include grandchildren. *Sauer v. Griffin*, 67 Mo. 654; *Keen v. Watson*, 39 Mo. App. 165. The statutes of many states contain provisions including descendants of deceased children within the rule as to advancements and hotchpot, but no such provision has been made in Missouri. 2 Woerner, Am. Law of Administration, sec. 559, and note.

*Geo. W. Shoemaker* and *Chas. H. S. Goodman* for defendants in error.

(1) It, therefore, sufficiently appears that an appeal was taken in time, and that this was duly followed by the transmission of a transcript of the record, with the papers in the cause, to the circuit court, from which it follows that under section 292, chapter 1, article 14, Revised Statutes, 1889, the court acquired jurisdiction of the subject-matter of the appeal. *Welsh v. Railroad*, 55 Mo. App. 599; *Watson v. Barber*,

55 Mo. App. 147; *Long Bros. v. Coal Co.*, 56 Mo. App. 605; *Burgess v. O'Donoghue*, 90 Mo. 299; *Wilkinson v. Sampson*, 56 Mo. App. 276; *Lowry v. Phillips*, 57 Mo. App. 232; *Pifer v. Stanley*, 57 Mo. App. 516. That an appeal was taken in due time is shown by the affidavit, which is in form required by statute and to which no objection is made, and by the appeal bond, which, though objected to, is a good and valid bond. *Newton v. Cox*, 76 Mo. 352; *Rubelman v. Green*, 18 Mo. App. 9; *State v. Thompson*, 81 Mo. 163; Woerner Am. Law of Admin., sec. 546, p. 1201; *Foster v. Foster*, 7 Paige, 48. (2) But, even if the bond were defective in omitting some of the statutory conditions, whatever may have been the effect prior to the repeal of section 290, chapter 1, article 14, Revised Statutes, 1889, and the enactment of a new section in lieu thereof by the act of 1891 (Laws, 1891, p. 68) since it appears by the affidavit and bond and the filing of the transcript that an appeal has been taken, under this new section the defective appeal bond will not operate to make the appeal a nullity, but is only an irregularity which, upon motion, plaintiffs could have cured by giving a new bond. *Newton v. Cox*, 76 Mo. 352; *Rubelman v. Green*, 18 Mo. App. 6; *State v. Thompson*, 81 Mo. 163; *Boone Co. v. Corlew*, 3 Mo. 12; *Welsh v. Railroad, supra; Watson v. Barber, supra; Long Bros. v. Coal Co., supra; Sampson v. Wilkinson, supra; Lowry v. Phillips, supra; Pifer v. Stanley, supra; Fox v. Wayne Co.*, 48 Mich. 643; Howell's Ann. Stat., 5979. The crucial test of jurisdiction in cases of this class is: Do the whole proceedings show that an appeal has been taken? (3) Again, the failure to approve the bond and to enter in the record an order granting the appeal are omissions of the court, judge or clerk of statutory duties, by which the appellant who has substantially complied with the

law on his part can not be injured or prejudiced. The maxim, *Actus curiæ neminem gravabit*, applies. Broom's Legal Maxims, pp. 115–119; *Bensley v. Haeberle*, 20 Mo. App. 648; *Bridge Co. v. Railroad*, 72 Mo. 664. (4) The understanding of the profession has always been that an advancement to a child was chargeable against the heirs of the child who died before the intestate. *Spradling v. Conway*, 51 Mo. 51. (5) The children of Henry F. Williams, deceased, appellants in this cause, inherit from their grandfather, the intestate, but they take as descendants and representatives of their father, and they take only the share he would have taken, if he had survived the intestate. This portion had been charged with the advancement made to Henry F. Williams in his lifetime, and, since his children could take only what he would have taken, they must take it, if at all, subject to advancements made to him. R. S. 1889, secs. 4465, 4469, 4470; Woerner's Am. Law of Administration, secs. 71, 554; *Spradling v. Conway*, 51 Mo. 51; 4 Kent, Com. [11 Ed.], side page 418; *Vaden v. Hance*, 1 Head (Tenn.), 300; *Sherwood v. Smith*, 23 Conn. 516; *Weatherhead v. Field*, 26 Vt. 665; Croswell on Executors and Adm'rs, sec. 526; Thornton on Gifts and Advancements, secs. 539, 540; *Copenhaver v. Copenhaver*, 9 Mo. App. 200; s. c., 78 Mo. 56. (6) If it is to be conceded that these appellants, as children of Henry F. Williams, deceased, take the portion which their father would have inherited from their grandfather, discharged of any debts of their father to their grandfather, it does not, therefore, by any means, follow that they take it free and clear of any advancements made to their father by their grandfather. A debt and an advancement stand upon entirely different footing. A debt owing to an ancestor, as from a son to a parent, is a personal obligation, the same as if

due to a stranger, and for which the children of the debtor are not liable, except to extent of *riens per descent*. But an advancement is not a debt or claim against the person advanced, but is a present charge upon the portion to which the one advanced will be entitled at the death of the ancestor. It is not a claim against his property, but a charge upon his inheritance, and those who succeed to his inheritance must take it as lessened by the advancement. Woerner on Admin., secs. 71, 554; Thornton on Gifts and Advancements, secs. 527, 540; *Weatherhead v. Field, supra.* (7) Appellants contend that our statute in relation to advancements (sec. 4470, R. S. 1889) is made to apply only to children, and hence can not be invoked in the case of grandchildren who come into partition, although they take as representatives of the child advanced. While it is true there is no specific mention of descendants or representatives in this section, yet, when we consider the whole law of descents and distributions as contained in sections 4465, 4469, and 4470, we shall see that they are necessarily within the purview of said sections, for, by section 4464, the children of a deceased child take only the portion which their parent would have taken if alive, and, if this portion has been charged with an advancement, they certainly take it so charged. *Mitchell v. Mitchell*, 8 Ala. 414; *West v. Bolton*, 23 Ga. 531; *Bransford v. Bransford*, 51 Ga. 20; *McLure v. Steel*, 14 Rich. Equity, 105; *Nelson v. Bush*, 9 Dana, 104.

SMITH, P. J.—This appeal presents but a single question for our decision, viz: whether, where both children and grandchildren survive an intestate, such grandchildren can be admitted to their deceased father's distributive share, unless they bring in an advancement made to him by the intestate.

Our statute, section 4465, Revised Statutes, pro-
vides that when any person having title to any real
estate of inheritance, or personal estate undisposed of,
or otherwise limited by marriage settlement, shall die
intestate as to such estate, it shall descend and be dis-
tributed in parcenary to his kindred, male and female,
subject to the payment of his debts and the widow's
dower, in the following course:   First, to his children,
or their descendants, in equal parts.   It further pro-
vides, section 4469, when several descendants of equal
degree of consanguinity to the intestate, come into par-
tition, they shall take *per capita*, that is, by person;
but, where part of them are dead and part living, and
the issue of those dead have a right to partition, such
issue shall take *per stirpes*—that is, the share of the
deceased parent.   And, by section 4470, it is still further
provided that, when any of the children of the intestate
shall have received in his lifetime any real or personal
estate, by way of advancement, shall choose to come
into partition with the other parceners, such advance-
ment shall be brought into hotchpot with the estate
descended.

The idea of requiring children who had been
advanced during the lifetime of their father to bring
the money or property thus received into hotchpot,
when he died intestate, appears to have obtained in
England from the custom of the city of London.
(Thomas' Coke, 254, *p, 319; 1 Cooley's Blackstone,
517), and in 1671 incorporated in the statute of distri-
butions, 29 Car. 2, chap. 3, sec. 25; 30 Car. 2, stat. 1,
chap. 6; and made perpetual by 1 Jac. 2, chap. 17, sec.
5.   Since this statute was enacted subsequent to the
fourth year of the reign of King James I., it is not to be
regarded as a part of the common law in this state, and
is not in force here, unless it has been adopted by stat-
ute.   R. S., 6561.   The custom of London, which has

just been referred to, is that which divided the free-man's personal estate into three parts, one of which, after the funeral expenses were paid, went to the widow, one to his children unadvanced by him in his lifetime, and the other one third, called the dead man's share, he might dispose of by will.   And any of the children who had not been fully advanced in the lifetime of the parent could, by bringing the sum so received into hotchpot, share equally with the others in the orphanage part.   1 Cooley's Blackstone, *supra; Mitchell v. Mitchell*, 8 Ala. 414.

The term advancement, when used in statutes of distribution, is always understood to mean money or property given to a child by the father, or anyone *in loco parentis*, in anticipation of inheritances.   Kinney's Law Dict. and Gloss., 27.   Blackstone, upon authority of Littleton, says that "this word hotchpot is in English a pudding," and that, "by this housewifely metaphor, our ancestors meant to inform us that the lands, both those given in frank marriage and those descending in fee simple, should be mixed and blended together and then divided in equal portions among all the daughters."   1 Cooley's Blackstone, 189.

*Proud v. Turner*, to be found in 2 Peere Williams, Reports, 560, and decided in 1729, was where a father had several children and in his lifetime advanced in part to one of them.   The child thus advanced in part died in his father's lifetime, leaving issue; afterward the father died intestate, possessed of considerable personal estate.   The Lord Chancellor held that the issue of the dead child must bring into hotchpot what their father received in part advancement, as he, if living, must have done.   The issue must stand in the place and stead of the father, claiming under him, and could not be in a better condition than their father, if living, would have been, had he claimed his distributive share.

And to the same effect are: *Hughes' Appeal*, 57 Pa. St. 179; *McRae v. McRae*, 3 Bradf. 199; *Barber v. Taylor*, 8 Dana (Ky.), 84; *McLure v. Steele*, 14 Rich. (S. C.), 105; *Bramford v. Crawford*, 51 Ga. 20; *Brown v. Taylor*, 62 Ind. 295. It will be found that the decisions in the cases just cited were mostly, if not all, influenced by local statutes providing that, in the distribution of estates, every child of the intestate, and if a child be dead, the representative of that distributive share, shall first account for advancements made in the intestate's life.

Judge Woerner, in section 554 of his work on the American Law of Administration, states that "a sound rule seems to be that in all cases where grandchildren take *per stirpes*, or in right of their parents, they take subject to advancements to their parents." This statement of the rule finds support in the following cases: *Person's Appeal*, 74 Pa. St. 121; *Skinner v. Wyne*, 2 Jones Eq. 41; *Calhoun v. Crosgrove*, 33 La. Ann. 1001.

The record discloses that Henry F. Williams, the father of the plaintiffs in error, was the brother of the defendants in error; that their father, William G. Williams, made an advancement to said Henry F. Williams, and that the latter died before the former. The defendants in error, children of William G. Williams, insist that the plaintiffs in error, his grandchildren, can not come into partition with them unless they first bring into hotchpot the advancement received by their father in his lifetime. While the plaintiffs and defendants in error are all the lineal descendants of William G. Williams, they are manifestly not of equal degree of consanguinity. Under the provisions of our statute, from which we have already quoted, the former take *per capita*, and the latter *per stirpes*. If the plaintiffs and defendants in error were all either children or grandchildren of William G. Williams, they would take *per*

*capita. Copenhaver v. Copenhaver*, 78 Mo. 55. It would, therefore, seem that, according to the rule declared in *Proud v. Turner, supra*, as well as that stated by Judge Woerner, already quoted, that the plaintiffs in error can not come into partition with the defendants in error without first bringing into hotchpot the advancement made to the father of the former.

The doctrine of advancement is founded wholly upon the statute. *Turpin v. Turpin*, 88 Mo. 337; Am. and Eng. Encyclopedia of Law, 220. The statute, section 4470, in express terms, requires only children of the intestate, who have received advancements, to bring the same into hotchpot, before they can share with the intestate's other children in the distribution of his estate. It is apparent, however, upon the very face of this section, that the purpose of its enactment was to secure an equal distribution of the estates of intestates among their children. This is the dominating thought, which is expressed in language too plain to be misunderstood. To give effect to such intent, the courts have, in a great variety of cases arising under statutes of distribution, and under wills, construed the term "children" to be broad and comprehensive enough in its signification to include "grandchildren." In 4 Kent's Commentaries, 418, it is stated that, when the statute uses the term "children" it may stand in a collective sense for "grandchildren" when justice or reason requires it. And to the like effect are these authorities: Endlich on Interpretation of Statutes, secs. 80, 321; *Wyth v. Blackman*, 1 Vesey, Sr., 196; *Boyle v. Hamilton*, 4 Vesey, Jr., 437; *Eskelman's Appeal*, 74 Pa. St. 46; *Hamilton v. Lewis*, 13 Mo. 184; *Hersha v. Bremerman*, 6 Serg. & R. (Pa.) 2; *Re Patton*, 41 Hun., 500.

Having in view what was the manifest intent of the legislature in the enactment of the statute, we think the term "children" therein used should be so construed

as to include the grandchildren, who are the children of a child of the intestate, who has received an advancement in his lifetime. Such a construction, we think, best effectuates the legislative intent.

But it is strenuously insisted by the plaintiffs in error that, under the rule declared by our supreme court in *Barnum v. Barnum*, 119 Mo. 63, they inherit from their grandfather and not from their father, and that therefore they are entitled to receive their share in the former's estate, in right of the latter, without reference to his advancement. It may be, and doubtless is, true, that according to the ruling in the case just stated, the plaintiffs do inherit from their grandfather and not through their father; still, their right to inherit is representative in its character and must be measured by that of their father, if he were living. It is conceded that their father's share, were he living, would be diminished by the advancement received by him, and why should they, who claim under him, as said by the chancellor in *Proud v. Turner*, "be in a better condition than their father, if living, would have been, had he claimed his distributive share." They must stand in their father's stead, for without this they can not be recognized as distributees of their grandfather's estate. The advancement was an incident attaching to the father's share, had he lived and claimed it, and no good reason is perceived why it does not as well attach to that share, when claimed by his children, as his representatives.

Under the rule declared in *Barnum v. Barnum*, if the father of plaintiffs in error had owed the intestate father a debt, that which would have been his share in the intestate's estate, had he lived and claimed it, would have descended to the plaintiffs in error, as his children, not subject to his debt to the intestate. But neither this nor any other case in this state, has announced a

principle which in the least upholds the contention that grandchildren, who inherit from their grandfather and not through their father,. may share, in right of their father, equally with the other distributees, who are children of their grandfather, in the distribution of the latter's estate, without first bringing into hotchpot the advancement made to the father in his life time, for, to do so, would, in effect, subvert that just and equitable principle of equality among the surviving children of an intestate, and the descendants of those who do not survive him, which pervades our entire statute of descents and distributions. We do not think that the rule declared in *Barnum v. Barnum*, and kindred cases, is applicable in a case like this.

But the plaintiffs in error make the further objection that the trial court did not have jurisdiction of the subject-matter of the action, for the reason (amongst others) that the appeal bond was neither approved by the probate court, nor the judge thereof in vacation. According to the ruling in *Green v. Castello*, 35 Mo. App. 127, this objection is fatal to the judgment.

It follows that the judgment must be reversed and cause remanded, with directions to the circuit court to dismiss the appeal from the probate court. All concur.

### ON MOTION FOR REHEARING.

Under the provisions of section 290, Revised Statutes, as amended by the act of 1889 (Session Acts, 1891, p. 68) neither the probate court nor the judge or clerk thereof in vacation has authority to grant an appeal until after the approval of the appeal bond. But, notwithstanding this, if an appeal be granted where no bond is filed, or, if filed, it be defective, the circuit court acquires jurisdiction. In such case the appeal on motion may be dismissed in the circuit court, unless the

appellant files a bond satisfactory to that court. Where, as in this case, the bond is not approved and no appeal is granted the circuit court does not acquire jurisdiction of the case by appeal, even though the transcript and papers in the case are lodged in the circuit court.

There is a distinction between a case in which an appeal has been irregularly granted and one where it has not been granted at all. In the former, jurisdiction is conferred, while in the latter it is not. In the former, the irregularity or defect in the appeal may be waived by a general appearance in the circuit court, while, in the latter, jurisdiction is not conferred nor waived by such appearance. In a case where the appeal confers no jurisdiction, but where the cause is one of which the court has original jurisdiction and the parties voluntarily appear in the case and proceed to trial, the court acquires jurisdiction not by virtue of the appeal but by the voluntary appearance of the parties. But in a case like this, where the jurisdiction of the circuit court is exclusively appellate and not original, a general and unlimited appearance of parties does not confer jurisdiction.

The motion is overruled.