Almer E. BECK, Individually and as Executor of the Estate of Ellen A. Beck, Deceased, and Harold W. Beck, Respondents,

v.

Clifford C. GEMEINHARDT, Appellant.

No. 54945.

Supreme Court of Missouri, Division No. 2.

March 8, 1971.

David Brydon, Graham & Hawkins, William Barton, Barton & Burton, Jefferson City, for respondents.

Russell T. Keyes, Keyes, Bushman & Hearne, Jefferson City, for appellant.

BARRETT, Commissioner.

This action in three counts was instituted by Almer E. Beck individually as a legatee and as executor of Ellen A. Beck and involves the construction of Ellen's will executed on September 9, 1966. Joined with Almer as a plaintiff was his brother, Harold W. Beck, both the then surviving children of Ellen. The defendant-appellant is Clifford C. Gemeinhardt, Ellen's grandson—the son of Ellen's deceased daughter Clara. After the perfection of this appeal Harold died and his brother Almer as his executor and sole beneficiary

was substituted as a party. In the meanwhile Harold's widow Iona elected to take against the will (RSMo 1969, § 474.160, V.A.M.S.) and she has now been substituted as a party entitled to a one-half interest in any property Harold may have owned. Despite the substitutions and status of the parties they will be referred to throughout by their original names and relationship to Ellen and to one another or simply as plaintiff-respondents and defendant-appellant, referring to the grandson Clifford.

While the suit is in three counts, the first relating to 151 acres of land known as the "home place," the second and third counts relate to the same provision in Ellen's will and to an 80-acre tract. The parties in speaking of the will refer to "paragraphs" but, strictly speaking, there is hardly more than one paragraph in the will. The will was witnessed by two bank employees but the will, as a matter of fact, is in longhand—it was written by Ellen and bears the usual imperfections of holographic wills. After "first" providing for the payment of her debts the will says, probably without a period at the end of that provision, "then I give and bequeath to my 2 sons and 1 grandson the following property" located in Cole County. To Almer there is given a tract of land not involved upon this appeal. Then as to two tracts of land totaling 151 acres and involved in Count I the will provides: "next I give the Home Farm in trust to Harold W. Beck reason alcoholic with all House Hold personal property, also the 1966 Plymouth for him to make his home there as long as he is able to take care of it and himself (then follows a description of the two tracts of land totaling 151 acres) *then it shall go back to the nearest kin."* (Emphasis supplied.) In answer to the question, "And have you lived on the home place with your mother during your lifetime?" Harold replied, "Practically all of it." As to this tract and Count I the court found that Ellen "the testatrix intended that plaintiff Harold W. Beck have a defeasible life estate * * * and upon the termina-

tion of said defeasible life estate, whether by death or the occurrence of the conditions set out, that said property is to go to the nearest kin of the said Ellen A. Beck, deceased, they being plaintiffs Almer E. Beck and Harold W. Beck, and defendant Clifford C. Gemeinhardt, and that they now hold a vested remainder in fee in and to said property as tenants in common."

Assertedly by reason of their pleadings, particularly the plaintiffs' petition, it is said that the decree as to Count I is "contrary to all of the pleadings in the case." It is said that plaintiffs are bound by their pleadings and cases stating this general rule are cited, as Kemp v. Woods, 363 Mo. 427, 251 S.W.2d 684. The appellant fails to note with what great pains the court in the Kemp case pointed to the conflict in the relief sought and that given. Implicit in the appellant's emphasis upon a rule of pleading is a tacit concession of the correctness of the court's finding and decree. In his answer the appellant somewhat ambiguously pleaded that in the clause in question the will "either creates a trust in an unnamed trustee" in favor of Harold "during the whole of the remainder of his natural life with all remainder interests therein *vested in this Defendant and his heirs* and assigns" as to an undivided one-half interest and the other one-half in Almer "or," it is alleged, a life estate in Harold and a one-half interest in appellant and Almer. And in conclusion appellant prayed, if the court refused these alternatives, "that the court further construe said will" favorably to him. (Emphasis supplied.) There was no affirmative assertion of general relief or a prayer to determine title, nevertheless, that was and is the central issue necessarily implicit in the cause, particularly upon this appeal. Cox v. Bryant, Mo., 347 S.W.2d 861, 863–864.

■ Upon its merits the appellant contends that the words "then it shall go back to the nearest of kin" were intended by the testatrix "to take away from Harold and to give to her *other* nearest of kin Almer and Clifford." (Emphasis supplied.) Aside from the lurking inconsistency in this contention there can be no doubt, in the absence of plain language and intention to the contrary (Commerce Trust Co. v. Weed, Mo., 318 S.W.2d 289, First National Bank of K. C. v. Sullivan, Mo., 394 S.W.2d 273), that "nearest of kin" was determined "as of the death of the designated ancestor (the testatrix)" Restatement, Property, § 308 and that of course meant and was the two named sons and grandson as tenants in common as the court decreed. St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S.W.2d 578.

Prior to the provision as to the 151 acres there was the provision relating to the 80-acre tract of land which the appellant concedes is "(t)he matter in which the most major controversy arises" as to Counts II and III. The appellant points to the repeated use of the word "want" and particularly the phrase inserted by interlineation by the testatrix "if he wants it" and argues that the language and consequently Ellen's intention was "at most a recommendation (to the grandson) and not a condition or a restriction upon the fee as having become vested in the defendant Clifford Gemeinhardt." In his brief appellant's contention is tersely stated in his assignment that the court erred in "finding and adjudging that defendant-appellant Clifford C. Gemeinhardt was vested only with a defeasible fee, terminable on the condition of plaintiff-respondent Harold W. Beck expressing a desire to purchase the land in issue for $2000.00." Needless to say, it is appellant's contention that the provision of Ellen's will as to the 80 acres vested in him a fee simple title and in Harold "a trust or defeasible estate." The appellant does not seriously attempt to point out the nature and elements of the "trust" of which he was trustee, but whether as to a trust or the simple intention of the testatrix, in her will the essence of the argument is whether the quoted language was mere "(p)recatory expressions (or) words of entreaty, re-

quest, wish or recommendation" (1 Bogert, Trusts, § 48, p. 372) or "a statement in legal form of the disposition of his property to take effect on his death" in which case "it will be treated as his will." 1 Page, Wills, § 5.19, p. 210. The appellant's position is that under this provision of the will he was given the fee simple title to the 80 acres and that once having been given that indefeasible estate it could not be cut down by subsequent language merely precatory in nature, as with the word "request" in Estill v. Ballew, Mo., 26 S.W.2d 778, 70 A.L.R. 321. Whether as involving a trust or a will the question presented is one of construction and is governed by the general rules of construction and the "test is whether or not testator intends, by his language, to control the disposition of his property. If he does, the words in question are testamentary and the instrument is his will, no matter in how mild a form this intention is expressed. Such terms are often said to be mandatory." On the other hand if the language and intent is in its strict sense precatory "it is not a will." 1 Page, Wills, § 5.19, p. 210–215.

■ Having in this manner recognized the problem it is not necessary to enter upon an extended consideration of so-called precatory trusts or even of precatory language, the governing general rules for the construction of wills and the construction after a devise in fee to a wife of a subsequent provision "I request and direct that my beloved wife shall by will, or otherwise, divide any remainder that may be left of my estate at her death, one-half to her relatives and the other one-half to my brothers and sisters, or their descendants" are fully set forth in Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21. It was held in that case, incidentally, that the widow's absolute title was not cut down by the noted precatory language. And see Pearson v. First Congregational Church of Joplin, Mo. App., 106 S.W.2d 941; Lemp v. Lemp, 264 Mo. 533, 175 S.W. 618. It is not necessary here to compare the language employed in other instruments as pointed to by the ap-

pellant, for example the word "desire." Ann.Cas. 1917B, p. 503. Here Ellen gives her grandson 80 acres and in the same sentence following the legal description "and I want him to sell this 80 acres to Harold W. Beck for $2000.00" and she interpolated "if he wants it." The word here is "want," not "desire," and even so the word may be "only precatory," depending upon the context and circumstances it may be and often is "construed to be mandatory and to amount to a *direction* or bequest." Rowe v. Strother, 341 Mo. 1149, 1154, 111 S.W.2d 93, 97 (there held to not be a legacy). It is not necessary to demonstrate upon the language, the most satisfying case is the well-considered Blumer v. Gillespie, 338 Mo. 1113, 93 S.W.2d 939. In that case there was a residuary devise to a wife apparently by the first sentence of which standing alone gave her "absolute title to the real and personal property of the estate." But immediately following and, as here, in the same sentence or paragraph, the will provided: "It is my wish that after my death she make a will bequeathing such of her real and personal estate, as she may inherit from me, to our son, Arthur E., upon her death. My idea and wish being that our son, Arthur, shall inherit what may remain of my estate after my wife's death." The language there and here, admittedly, is not identical or even, perhaps, comparable, but the principles applied are peculiarly applicable and controlling: "The mere fact that testator used the words 'my wish' and 'my idea and wish' in reference to the disposition of the property after his wife's death does not necessarily mean that he was not expressing his will and intention in that regard, as distinguished from a mere wish or desire. * * * When the intent of the testator can be clearly determined from a consideration of the will as a whole, then all technical rules that would stand in the way of its execution must be disregarded. Where, as in this case, the testator clearly expressed his wish or his idea, the question to be determined is whether or not from a fair consideration of all provisions of the will 'the testator intended to impose an

obligation on his legatee to carry his wishes into effect, or * * * intended to leave it to the legatee to act on them or not, at his discretion.' " And so the court held that there was a life estate only in the wife with a remainder absolutely to the son. It was pointed out that in using the word "wish," as with "want" here, the will "does not leave it to the discretion and judgment of his wife to say what disposition shall be made of this property at her death." It was said that the word "idea" meant the testator's expressed intention. And, finally, the court held that the precatory language was intended to control the disposition of his property, that it was testamentary in character and mandatory. And here the word "want" as repeatedly employed did not create a trust, or here was not merely precatory in character, and whatever estate was in Clifford was defeasible upon Harold's paying or offering to pay Clifford $2000.00. Annotations, 49 A.L.R. 10, 82, 70 A.L.R. 326.

In the latter connection appellant contends that the court erred in finding that Harold had tendered $2000.00 to him. The facts were that in March 1967 Harold's lawyer wrote to Clifford in California notifying him that Harold intended to buy the 80-acres at the price stated by Ellen. In a second letter Harold sent Clifford a deed and notified him that he had filed the appropriate papers in the probate court. On March 13, 1967, Harold filed a formal "statement of intention to purchase real estate" in the probate court and at the same time deposited his personal check in the sum of $2000.00. These and other circumstances as to the tender were testified to upon the trial and the court found as a fact a good and sufficient tender. It is not necessary here to consider whether the statement filed in the probate court and the personal check constituted a sufficient tender, in his pleadings and throughout the trial the appellant took the position that under the will his was a fee simple interest, that Harold in no event had an interest and of course there was no place for a tender—in short, a tender of $2000.00 in cash or in any other form would have been an idle gesture. Miran Investment Co. v. Medical West Bldg. Corp., Mo., 414 S.W.2d 297; Domyan v. Dornin, Mo., 356 S.W.2d 70.

For the indicated reasons the judgment is affirmed.

STOCKARD, C., not sitting.

PRITCHARD, C., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.