**Myrtle GRAVES, et al.,
Respondents-Appellants,**

v.

**Fay HYER, et al.,
Appellants-Respondents.**

**No. WD 31860.**

Missouri Court of Appeals,
Western District.

Dec. 22, 1981.

Douglas B. Eskridge, Kansas City, for respondents-appellants Frey, Nower, Offutt, Davis, Smith, Newcomb, Acker and Simonis.

Daniel M. Czamanske, Riverside, for respondent-appellant Tate.

S. Preston Williams and Thomas E. Barzee, Jr., No. Kansas City, for respondents-appellants Cook.

E. Wayne Taff, Kansas City, for respondents-appellants Hyer.

David Lee Wells, No. Kansas City, for respondent-appellant Graves.

Frank K. Nichols, St. Joseph, for respondent-appellant Roberts.

John J. Hager, Kansas City, for respondents-appellants Backman, Sweeney and Peters.

John R. Moore, Platte City, for appellant-respondent Barbara Cook.

R. Michael McGinness, Platte City, for appellants-respondents Large, Powers, Saird and Smith.

Robert B. Paden, Maysville, for appellants-respondents Milton B. Cook, Jr., Martha Cook, Carolyn Baker, Conroe Cook and Charles Cook.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

KENNEDY, Presiding Judge.

The present case involves the identification of the "nearest blood kin" of one Wesley B. Cook, within the meaning of Mr. Cook's will. Four groups of contenders claim the designation. Mr. Cook died January 31, 1929, the owner of the quarter-section of Platte County farmland, the title to which is the res of the present contest.

The case was submitted upon an agreed statement of facts.

Testator's will, which had been signed six years before the testator's death, included the following Article Fourth:

I will and devise to my granddaughter, Jennie D. Palmer, the following described tract or parcel of land, lying, being and situate in the County of Platte and State of Missouri, to-wit; the southwest quarter of Section 21, Township 54, Range 36, to have and to hold the same for and during her natural life, and at her death to the heirs of her body; and should my said granddaughter die without issue then said property shall go to my son, Charles E. Cook, and the heirs of his body; and should my said son be then dead and without issue, then all of said property shall revert to my nearest blood kin.

The testator as noted above, died January 31, 1929, a widower. His wife had died long before, in 1905. When his will had been made, in 1923, one of their three children was still living, Charles Eugene Cook, but the other two had died. Charles Eugene

Cook died in 1926, predeceasing the testator, so that testator died without any children surviving him.

The only descendant of Wesley B. Cook who survived him was his granddaughter, Jennie D. Palmer, the daughter of a deceased daughter, who was the life tenant of the real estate in question under his will.

As to collateral relatives, testator had had two brothers, George S. Cook and Hamilton Light Cook. They had died in 1877 and in 1915 respectively. Of their children, testator's nieces and nephews, only George Cook, Jr., son of George S. Cook, survived the testator. Hamilton Light Cook's children, Emma, Molly and Alfred T., and George S.'s daughter Jessie had all predeceased the testator. All the deceased nephews and nieces had been survived by descendants except Molly. Testator in his will provided a legacy of $1,000 for "the living heirs" of Hamilton Light Cook and the like amount for "the living heirs" of George Cook.

The testator's son, Charles E. Cook, who was to succeed to the possession of the land upon Jennie's death without issue, had as noted predeceased the testator. He had never married and he died without children.

The granddaughter named in the above-quoted Article Fourth, Jennie D. Palmer, as earlier noted, survived the testator. She entered into and continued in possession of the land until her death in 1975. She died childless.

Upon the concurrence of those conditions, the will provided, "Then all of said property shall revert to my nearest blood kin". The object of this case is to determine who are the "nearest blood kin" of Wesley B. Cook, as intended by his will. Two groups of claimants, each divided into two subgroups, step forward.

One group of claimants contends that the remainder to "my nearest blood kin" was a vested remainder which vested upon the death of Wesley B. Cook (subject, however, to defeasance in case Jennie should be survived by heirs of her body). It is the position of this group that the class membership was fixed and determined at the time of testator's death, and that claimants who are members of this group take by inheritance from them.

This group is divided into two subgroups, which we shall call the per capita group and the per stirpes group. The per capita group says that the "nearest blood kin" of Mr. Cook at the time of his death in 1929 were those living persons who were in the nearest degree of consanguinity with him at the time of his death, to the exclusion of the descendants of any deceased person in the same degree of consanguinity.

We pause here to say that it is the position of this per capita subgroup which was adopted by the trial court. Mr. Cook at the time of his death had one nephew who survived him, George Cook, Jr. The trial court held that the remainder following the life estate of Jennie D. Palmer vested in this nephew at the time of testator's death, and had descended to his heirs upon his death. The descendants of the testator's nieces and nephews who had predeceased him were excluded.

The per stirpes subgroup (one group of appellants, excluded under the trial court's judgment as explained in the preceding paragraph) are the descendants of nephews and nieces who had predeceased the testator, who were in the same degree of consanguinity with him as was George Cook, Jr. They contend that they are entitled to take their respective parents' shares per stirpes. If their position were adopted, the estate would be divided into four equal parts. One share would have been vested in George Cook, Jr., at the testator's death in 1929; one share in the descendants of Jessie R. Hyer, niece of testator, who had predeceased him; one share in the descendants of Alfred T. Cook, Sr., nephew of the testator who had predeceased him; and one share in the descendants of Emma F. Cook Nower, niece of the testator who predeceased him.

A second group claims that the class of the "nearest blood kin" of Wesley B. Cook was intended to be fixed, not at the death of the testator in 1929, but at the date of the death of the life tenant, Jennie D.

Palmer, in 1975. Their contention is that their remainder remained contingent until the later event and vested only at that time.

This group, like the first, is divided into two subgroups—those who maintain that only those living members of the class (living, that is, at Jennie's death) in the nearest degree of consanguinity with the testator are to take the real estate (the per capita subgroup); and the per stirpes subgroup, which claims that the descendants of others of the same degree of consanguinity with testator, but who had predeceased the life tenant, take the respective shares of their parents per stirpes. At the time of Jennie D. Palmer's death, those persons in the nearest degree of consanguinity with testator Wesley B. Cook were great-nephews and great-nieces. Five of them were living. They were Fay E. Hyer, Hamp Cook, Maude Gish, Myrtle Graves, and Wesley B. Cook, Jr. They claim that the estate should be divided into five equal parts, one to each of them. There were, however, six other great-nephews and great-nieces who had predeceased Jennie D. Palmer, leaving descendants who survived her. These descendants who make up the per stirpes subgroup, maintain that the estate should be divided into 11 equal shares, a share for each great-nephew and great-niece, and that they should be entitled to take by representation their respective parents' shares.

We have concluded that the position last described is correct, that the estate should be divided into 11 equal shares, vesting upon the death of life tenant Jennie D. Palmer as follows: One share to Fay E. Hyer; one share to Hamp Cook; one share to Maude Gish; one share to Myrtle Graves; one share to Wesley B. Cook, Jr.; one share to the descendants of Emma F. Davis per stirpes; one share to the descendants of Alfred A. Nower per stirpes; one share to the descendants of Alfred T. Cook, Jr., per stirpes; one share to the descendants of Esther Large per stirpes; one share to the descendants of Milton Cook per stirpes; and one share to the descendants of Elizabeth Tate per stirpes.

I

We shall begin with the question which is one of the two pivotal issues in the case. That question is whether the "nearest blood kin" of Wesley B. Cook was to be ascertained at the death of Wesley B. Cook or at the death of life tenant Jennie D. Palmer, which depends in turn upon whether the devise quoted above created—as the first group claims—a vested remainder (as of testator's death) or, as the second group claims, a contingent remainder at the time of testator's death to vest at the death of life tenant Jennie D. Palmer.

Laying aside the dispute between the per stirpes subgroup and the per capita subgroup, the first group argues that Wesley B. Cook's will created a vested remainder. It is characteristic of a vested remainder that the legal title comes to reside at once in an identifiable person or persons, although his or their possession may be postponed until termination of the preceding estate. The first group says that fee simple title vested at the death of Wesley B. Cook in 1929 in those who were his "nearest blood kin" at that time. The persons who became entitled to possession of the quarter-section of land upon the death of Jennie D. Palmer, they argue, are those who have inherited the same from those persons. Faced with the fact that Jennie D. Palmer might have had children who survived her, who would then take in fee simple at Jennie's death, in which case testator's "nearest blood kin" would be deprived of all interest of any description, respondents explain that this contingency does not prevent the remainder's having vested. They say it was "vested subject to complete divestment" or "vested subject to total defeasance".

These parties cite three cases for their position which we shall briefly note:

*Beck v. Gemeinhardt*, 464 S.W.2d 22 (Mo. 1971): The issue presented for the court's decision in that case is not the same as the one before us. A testatrix had devised a life estate in a farm to her son Harold W.

Beck "for him to make his home there as long as he is able to take care of it and himself ... then it shall go back to the nearest kin". Testatrix was survived by the said Harold W. Beck, another son Almer and a grandson Clifford, son of a deceased daughter. The issue in that case, which was raised by the grandson, was whether Harold W. Beck, the defeasible life tenant, who apparently became unable to care for the farm and himself, so that his estate came to an end, was included among the "nearest kin" as remainderman. The grandson contended that Harold should not be included, but that the remainder should be divided equally between the second son, Almer, and himself. There was no issue whether the remainder to the "nearest kin" vested at testatrix' death or at the termination of the preceding estate. The case does say, gratuitously, that the "nearest kin" was determined as of the date of the testatrix' death. But that was not the issue, and the same persons would take in the same proportions whether the estate vested at the death of the testatrix or at the termination of the defeasible life estate.

*Gardner v. Vanlandingham,* 334 Mo. 1054, 69 S.W.2d 947 (1934): Testator willed his residuary estate to his wife for her life "and at her death I direct that residue of my estate be divided equally among my heirs". Another sentence followed: "In the event of the death of any of my heirs, then the share they would have received if living shall descend to their issue".

The provision was held to vest in the testator's brothers and sister (who were his heirs) at his death the remainder in fee, subject to his widow's life estate. The language in the concluding sentence did not make the remainder contingent, to vest only upon the death of the life tenant, but "was no more than a contingent executory devise which would devest the title of such of these five remaindermen who should die, with issue, prior to the death of the life tenant and vest such interest in their issue". *Id.* 334 Mo. 1054 at 954.

This interpretation of Wesley B. Cook's will is urged upon us by those whose inter-

ests are thereby served. They argue on the basis of that case that fee simple title in remainder vested in testator's nearest blood kin (excluding Jennie D. Palmer) at the time of his death, subject to defeasance if life tenant Jennie was survived by heirs of her body.

We do not think that *Gardner* is in point. As Judge Hyde there pointed out, "Almost every will presents some difference in language and circumstances, so that, to some extent, each must be considered apart from any other case in order to ascertain its meaning in the light of the facts as they were known and considered by the testator". *Id.* 334 Mo. 1054 at 949–950. In *Gardner,* unlike the Wesley B. Cook devise now under examination, the court was dealing with a remainder to testator's "heirs", a word which in a peculiar way speaks to the time of one's death, and the court was able to cite cases and secondary authorities specifically supporting its holding. Furthermore, the court could find from the wording of the devise an intent on the testator's part to bring the fee to rest in his heirs, determined as of his death—but then, by means of a "contingent executory devise", as the court called it, to cut down the amplitude of the previously given estate. The estate of the heirs (vested, mind you, at the death of the testator) was subject to a *condition subsequent.* This is characteristic of invested remainder. L. Simes and A. Smith, The Law of Future Interests, § 165 (2d ed. 1956).

 Such was not the case in Wesley B. Cook's devise. The estate of his "nearest blood kin" was subject to two *conditions precedent* —that the life tenant die without issue, that Charles E. Cook also have died, also without issue. Only upon the happening of those conditions would the fee simple estate vest in those who answered the description of Wesley B. Cook's "nearest blood kin". The estate of the "nearest blood kin" was subject to conditions *precedent,* an ensign of the contingent remainder as opposed to a condition *subsequent.* Simes and Smith, supra.

The *Gardner* case is instructive in that it points up this contrast between a vested estate subject to devestment upon the happening of a condition subsequent, as over against an estate which remained contingent until the happening of conditions precedent. *Gardner* is actually a casebook example of the former kind of devise, while the Wesley B. Cook devise is of the latter sort.

*St. Louis Union Trust Co. v. Kaltenbach*, 353 Mo. 1114, 186 S.W.2d 578 (1945): This case involved a bequest to a trustee for the lifetime of testator's daughter "and at her death without children her estate to descend to next nearest of kin". Without lengthening this opinion by point-by-point comparison, we may say that the "whole plan for the disposition of testator's estate", and the peculiar language of the will, persuaded the court that it was the "true intent and meaning of the testator" that the remainder vest in certain persons (named earlier in the will) and their descendants, a group to be determined at testator's death. Neither the language of the Wesley B. Cook will nor its testamentary scheme leads to the same result as *Kaltenbach*.

■ We find in the will before us rather an intent on the testator's part that the group—"my nearest blood kin"—be those that answered that description at the time of the life tenant's death. The remainder was contingent until that event, when it vested in the testator's "nearest blood kin" as of that time. That conclusion is indicated by the following considerations: First, the full benefits of the fee simple estate in remainder could not be enjoyed by anybody before the existence of certain conditions precedent. Professor Simes says that the outstanding characteristic of a contingent remainder is that. L. Simes and A. Smith, The Law of Future Interests, § 133 (2d ed. 1956). We have already noted in our discussion of *Gardner v. Vanlandingham*, supra, the contrast between a vested remainder subject to defeasance upon the happening of a condition subsequent, as represented by the devise in *Gardner*, and the devise in the present case.

Second, it is to be noted here the emphasis given the word "then" by its repetitive use. Observe: "... and should my said granddaughter die without issue *then* said property shall go to my son, Charles E. Cook, and the heirs of his body; and should my said son be *then* dead (plainly here referring to the time) and without issue, *then* all of said property shall revert to my nearest blood kin". One might debate whether the two "thens" relate to time or whether they should be interpreted to say "in that case". Give them either meaning, and the intent seems plain that the conditions upon which "my nearest blood kin" shall enjoy the benefits of the estate are conditions precedent.

The American Law Institute restatement of the law of property abandons the classification "contingent remainder" and substitutes remainder "subject to a condition precedent". 2 Restatement Property, § 157 (1936). Of this change in terminology, Professor Simes says, L. Simes and A. Smith, Laws of Future Interest, § 133 (2d ed. 1956):

There is considerable merit in the change in terminology because it makes less likely a confusion between the interest subject to a condition precedent and a vested defeasible interest subject to a condition subsequent.... Finally, the term "remainder subject to a condition precedent" serves to emphasize the outstanding characteristic of the interest, namely, the existence of a condition precedent which must be fulfilled before anyone can enjoy the full benefits of the particular interest.

Third, if "my nearest blood kin" is to be determined as of testator's death, we are faced with the problem of Jennie's being his "nearest blood kin", to the exclusion of all the collaterals. We suppose—but without holding so, of course—he did not mean life tenant Jennie to be the life tenant and the vested remainderman. The parties who would like the remainder to have vested at testator's death get around that problem by saying that the testator had intended to say, "My nearest blood kin, *next to Jennie*",

a solution which did not appeal to the court in *Beck v. Gemeinhardt*, supra, at 24. The problem dissolves if "my nearest blood kin" is ascertained at Jennie's death without issue. *Epley v. Epley*, 585 S.W.2d 308 (Mo. App.1979).

A case remarkably like the case we have before us is *Norman v. Horton*, 344 Mo. 290, 126 S.W.2d 187 (1939). There a certain deed gave a life estate to Celeste B. Curd, "with remainder over to the heirs of her body, legally begotten—but should the said Celeste B. Curd die without bodily heirs, as aforesaid, surviving her, then the title to the above described Real Estate, at her death, shall revert to and vest absolutely in the Heirs-at-law of the said John Herriman, one of the said parties of the first part herein". This was held to create a contingent remainder vesting only at the death of the life tenant, Celeste B. Curd. Said the court, at 190:

> We are of the opinion the grant created, possibly best expressed, contingent class remainders in the alternative or with a double aspect (citations omitted)— to a class, because not to persons designated by name but to a group designated by a general descriptive term; alternative, because primarily to the legally begotten bodily heirs of Celeste B. Curd, surviving her, and secondarily to the "heirs at law" of John Herriman; and contingent as hereinafter indicated—and that said remainders finally determined and vested upon the death of Celeste B. Curd. Such ruling is well within the holdings in *Eckle v. Ryland* [256 Mo. 424, 447, 165 S.W. 1035, 1041(6) (1914)], and *Tevis v. Tevis*, Div. 1, 1914, 259 Mo. 19, 38(3), 167 S.W. 1003, 1007(6), Ann.Cas. 1917A, 865, 870(3).

With changes of names, the same thing can be said of the case before us. We hold that Article Fourth of the Wesley B. Cook will created contingent class remainders in the alternative, primarily to the heirs of the body of Jennie D. Palmer, and secondarily to the nearest blood kin of Wesley B. Cook. The remainders finally determined and vested upon the death of Jennie D. Palmer.

A minute comparison of the many cases which deal with this problem is tedious and unprofitable, but we will notice one more. In *Epley v. Epley*, supra, the devise was to the testator's grandson, Glen Epley, "for and during his natural life and at his death to go to the heirs of his body but should my said grandson go without leaving bodily heirs, then said real estate shall revert to my heirs at law". It was held that the class of his heirs entitled to take his devised reversion was to be determined as of the death of the life tenant, Glen Epley. Glen Epley, whose death was to determine the class to take the reversion could not then be counted as an "heir". This case is further authority for our holding in this section of our opinion.

## II

We come then to the second problem in the case. That problem is whether the "nearest blood kin" of Wesley B. Cook means only those persons living at the time of vesting who are in the nearest degree of consanguinity (the fourth degree of consanguinity, by our holding in Part I hereof); or whether the descendants of persons of the same degree of consanguinity but who had predeceased the life tenant, take their ancestors' share per stirpes?

Those appellants who claim that the class is made up only of those persons of the nearest degree of consanguinity who were living at the time of vesting rely upon *Smith v. Egan*, 258 Mo. 569, 167 S.W. 971 (1914). They quote the following statement from the *Smith v. Egan* opinion, supra at 972, which was in turn quoted from the respondent's brief therein:

> The terms "nearest blood kin" when used as an ultimate limitation in the conveyance of real estate, simpliciter (that is, without reference to any other description or designation), does not refer to those who take under the statute of descents and distributions, but to those persons who are nearest in degree of consanguinity, as computed by the civil law.

The *Smith* case did not involve the issue we are dealing with here, i.e., whether de-

scendants take the share of deceased parents who would have been members of the class in the nearest degree of consanguinity to the decedent. The contest in *Smith v. Egan* was between the father and mother of the deceased life tenant on the one hand and her brother on the other, as to who was the decedent's "nearest blood kin". The parents, being in the first degree of consanguinity, were held to take to the exclusion of the brother, who was in the second degree. The contention of the brother was that the statute of descent and distribution fixed the definition of "nearest blood kin", so that he would share equally with the parents. The Supreme Court rejected his argument.

The Supreme Court in the later case of *St. Louis Union Trust Co. v. Kaltenbach*, supra, noted a division of authority upon the question here involved. It did not consider *Smith v. Egan* to have settled the question. It noted that the parents of the deceased life tenant who were also the grantors in the deed, had evidenced their intent in using the term "nearest blood kin" of the life tenant by treating the land as theirs after the life tenant's death, as shown by their conveying the land to their other children. We take it from *Kaltenbach* that the authority of *Smith v. Egan* is to be narrowly confined to its facts.

*Kaltenbach* went ahead to endorse the following rule from 3 Restatement of Property, § 307 (1940):

When a limitation is in favor of the "next of kin" or "relatives", of a designated person, or is in other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, the persons so described by the limitation as conveyees are those who under the applicable local law would succeed to the personal property of the designated ancestor if such ancestor died intestate at the time when the group is to be ascertained in accordance with the rule stated in § 308.

In commenting upon the Restatement rule, the opinion says: "It seems to us that, in most cases at least, construction according to these rules would be more likely to conform to the intent of a testator, who is a layman, in using such words as 'next of kin' and words of similar import." *Id.*, 353 Mo. 1114, at 581.

It is true that the *Kaltenbach* opinion finds from the language of the devise there under consideration, without recourse to any rule, a testamentary intent that descendants of deceased members of the class take their parents' shares by representation. But it is our reading of the case that the court was approving the *Restatement* rule in preference to *Smith v. Egan*, supra.

■ The effect of the above quotation from the *Restatement* is to adopt what is now § 474.020, RSMo 1978, which has been unchanged in our law since 1822. It provides that where part of a class of equal degree of consanguinity to the intestate are living and part dead, that the issue of those dead take the deceased parents' share per stirpes. *Aull v. Day*, 133 Mo. 337, 34 S.W. 578 (1896); *Copenhaver v. Copenhaver*, 78 Mo. 55 (1883); *Estate of Williams*, 62 Mo. App. 339 (1895); *Lewis v. Williams*, 414 S.W.2d 367 (Mo.App.1967).

■ Of course, the intent of the testator controls, and that intent is to be gathered from the whole instrument. Sec. 474.-430, RSMo 1978; *Shriners Hospitals for Crippled Children v. Emrie*, 347 S.W.2d 198, 200 (Mo.1961). No certain settled meaning is to be given the phrase "nearest blood kin" wherever it may be found. But where there is no indication that the testator had some different intent, the Restatement definition will be applied. That we take to be the rule of *Kaltenbach*. And in the case before us, we find no clue to a contrary intent of the testator.

■ We hold therefore that the descendants of Wesley B. Cook's grand-nephews and grand-nieces who predeceased the life tenant, take their parents' shares per stirpes, along with those grand-nephews and grand-nieces who survived her.

The judgment is reversed and the cause is remanded to the trial court for the entry of

a new judgment in accordance with this opinion.

All concur.